CLARK and PERRY, *appellants, vs.* SMITH, *respondent.*

The intention of a testator to cancel or revoke a clause in his will, however strongly declared, is of no consequence, unless it be carried out by some act amounting, in judgment of law, to an actual cancellation or revocation.

A testater, having an only son, James W. Smith, devised certain real estate to his "son James W. Smith." After the execution of the will he, with a pen, erased from the clauses of the will containing the devise the name "James W. Smith," leaving the word "son" uncanceled. *Held* that neither the will, nor the devises to James W. Smith, were revoked by the erasures.

THE surrogate of Tioga county adjudged and decreed that a paper executed by Wait Smith, deceased, was his last will and testament, and that it was duly executed and valid. Also that no part of said will was revoked by the deceased during his lifetime; that the deceased, at the time of executing said will, was in all respects competent to make a last will and testament and to devise real estate, and not under any restraint. The surrogate admitted said will to probate, and it was recorded in his office as a will of real and personal estate.

Rachel Clark and Clarissa Perry, two of the children and heirs at law of the deceased, contested the will and appealed from the decision of the surrogate; and insisted that the surrogate erred in rejecting evidence offered by them, and in deciding that the second and fourth clauses in the will were not revoked by the deceased in his lifetime.

The second and fourth clauses were marked and contained erasures, when the will was presented to the surrogate, as follows, to wit:

"Second. I give and devise to my son [James W. Smith,]* to take possession after the death of my wife, two-thirds of the farm upon which I now reside and the buildings situated thereon. I also give and bequeath to my said [son James]* W. all my personal property, except my household furniture, which I also bequeath to my said [son,]* to take effect after the death of my wife.

Fourth. I give and devise to my said son [James W.]* all the rest and residue of my real estate, which I have not

Clark *v.* Smith.

herein specifically devised and which I shall not have conveyed to my children or other persons during my lifetime, to take effect in possession on the death of my said wife; and in case the income of the property I have above bequeathed to my beloved wife Rachel, for life, shall not be sufficient for her support, I do hereby enjoin upon my son [James]* W. to supply any deficiency."

The proof showed the deceased never had but one son, and that his name was James W. Smith. The name of James W. Smith was not, nor was the word son, mentioned in any part of the will except the two clauses above set forth. The deceased kept possession of the will from the time it was signed by him, in the year 1859, except perhaps a day, until he died, in April, 1860; and the proof tended to show that the deceased made the marks or erasures in the second and fourth clauses of the will in the winter or spring of 1859.

The contestants proved, that in February or March, 1859, the will was opened and read through in the hearing of the deceased and at his request; that it was then perfect; but that the deceased then said James should have no more of his property, and asked the persons present to witness what he said; when one of them remarked to him, " then erase his name or alter it to suit yourself." Some other remarks were then made, but nothing further was done, and the will was put back into the trunk of the deceased with his other papers.

One witness testified that about April 1, 1859, she saw the will and discovered the marks or erasures on it, and talked with the deceased about them. The contestants offered to prove that in the same conversation the deceased admitted he made said marks, and that he made them with the intent and for the purpose of cancelling the second and fourth clauses of the will. The offer was objected to, on the ground that the deceased's declarations, not a part of the *res gestæ*, were inadmissible. The surrogate sustained the objection, and the contestants excepted.

* The words in brackets were crossed with a pen.

The contestants offered to show that James W. Smith stated and admitted, shortly after the decease of his father, Wait Smith, and before the will was opened and read, that his father had informed him that he was going to cross out his name from the will, and give him no more of his property; and that said James W. Smith said he should be satisfied if he found it so. This offer was objected to, on the ground that what the deseased told James W. Smith was not evidence, and that the residue of the offer was immaterial. The objection was sustained, and the contestants excepted.

Harris Miller (a son-in-law of the deceased) testified, under objection, that "it was proposed by some one of them present at the time the will was read, that I should either write a new will, or fix it some way to suit him, and I objected, because I was a member of the family. I proposed that he should get Mr. Canfield to do it. I told him I could see Mr. Canfield, if it was his request. He consented to it, and I saw Mr. Canfield when he was returning past the house. I told Mr. Smith that Canfield would attend to it at any time. It was Amos Canfield, the executor named. I don't know that I told him what way Canfield said it could be done."

*B. F. Tracy*, for the appellants.

*George Sidney Camp*, for the respondents.

*By the Court*, BALCOM, P. J. I think we need not determine whether, if the testator had erased the word son in the second and fourth clauses of his will, only those two clauses or the entire will would have been revoked; and I also think we should not decide whether the surrogate erred in following the dicta of Judge Selden in *Waterman* v. *Whitney*, (1 *Kern.* 159,) in rejecting evidence that the testator admitted he made the marks or erasures in the second and fourth clauses of his will, with the intent and for the purpose of cancelling or revoking those clauses. I have come to the last mentioned

Clark *v.* Smith.

conclusion for the reason that the rejected evidence would not have changed the case if it had been received. If the testator made the marks or erasures, in the second and fourth clauses of his will, with the intent and for the purpose of cancelling or revoking those clauses or the entire will, they did not effectuate such intention or purpose. They did not materially alter the sense or meaning of the will or either clause in it. If the will had been written without either of the words in it, which have been marked or erased, its meaning and effect would have been precisely the same they were before those words were mutilated. I take it to be clear that the intention of a testator to cancel or revoke a clause in his will, however strongly declared, is of no consequence, unless it be carried out by some act amounting in judgment of law to an actual cancellation or revocation. In *Martins* v. *Gardiner*, (8 *Sim.* 73,) the testator, by a clause in his will, directed his executors to set apart a fund sufficient to produce the annual sum of ten pounds, and to pay that sum into the proper hands of his sister, [*Elizabeth,*] the wife of Francis Betley of Yarmouth, in the county of Norfolk, butcher, for her life, or into the hands of such persons as the said Elizabeth Betley should appoint, to the intent that the same might be for the separate use of the said Elizabeth Betley; and he directed that the receipt of the said [*Elizabeth*] should be a sufficient discharge for the annuity; and he also directed his executors to divide the residue of his estate equally amongst his brother W. Gardiner and his sisters Sarah Gardiner and [*Elizabeth*] the wife of the said Francis Betley. The name Elizabeth was afterwards erased by the testator, wherever it occurs, as above included within brackets, and the question was whether the bequests to Elizabeth Betley (whose right name was Bateley) were revoked. The vice chancellor decided that, as the description, and in some places the name, Elizabeth Betley, remained uncanceled, the court was not warranted in holding that the bequests to her were revoked. Now in this case the word son remains uncanceled in the clauses wherein the name

James W. Smith was erased, and as the testator had but one son and his name was James W. Smith, the devises to him have not been revoked. Sufficient words remain to make them as perfect and effectual as they were before the name James W. Smith was erased.

For the foregoing reasons I am of the opinion the testator did not revoke his will, or either of the mutilated clauses in it.

It follows that the decision of the surrogate should be affirmed.

Decision accordingly.

[Broome General Term, July 9, 1861. *Balcom, Campbell* and *Parker,* Justices.]