# Woodruff *v.* Hundley.

### Contest of Probate of Will.

1. *Execution of will; what necessary to render instrument valid as such.*—Under the provisions of the statute, one essential requisite to the validity of a will' is that it should have been attested by at least two witnesses who subscribed their names thereto in the presence of the testator, (Code, § 4263), and proof of this requisite is as necessary in order to admit the paper to probate as a will, as· is a compliance with the statute necessary to give validity to such paper as a will.

2. *Same; sufficiency of attestation clause.*—While under the statute, it is necessary for the validity of a will that it should have been attested by at least two witnesses who subscribed their names thereto in the presence of the testator, no particular words are essential to constitute an attestation, and such words as "attest" or "witnesses" or some similar expression, although not constituting a compliance with all the statutory requirements, will answer the purpose, if the attestation was otherwise legal.

3. *Same; same; question for the jury.*—Where the names of two persons are written in the place in the will where the names of attesting witnesses are usually found upon such instruments, and only the word "witness," without any further attestation clause, appears in conjunction with the names, if, at the time of propounding the will for probate, the persons whose names appeared as witnesses are dead, and there was proof of the genuineness of their signatures as well as that of the testator, as is allowed under the statute, (Code, § 4276), the instrument offered to be probated is properly admitted in evidence, and it becomes a question for the jury to determine whether all the requisites of the statute as to the proper attestation of the instrument to make it a valid will have been complied with.

4. *Contest of probate of will; revocation by tearing.*—In order to constitute the revocation of a will by tearing, the paper must be so materially mutilated that, if unexplained by accompanying declarations, an intent to revoke it may be inferred from its appearance, taken with the act of tearing itself; the act of tearing must be one which stamps upon it an intention that the paper should have no effect.

[Woodruff v. Hundley.]

5. *Same; same; case at bar.*—Where a will is written upon two sheets of paper which have been fastened to one another by the use of pins, the fact that the testator removed said pins thereby restoring the paper to the condition in which it was when signed by her, without, in any way mutilating, erasing or disturbing a syllable, word, phrase or sentence of the will or tearing the sheets of paper, does not amount to such a tearing of the will within the meaning of the statute, (Code, § 4265), as will work a revocation thereof.

6. *Same; same; admissibility of testimony of testator.*—On the contest of the probate of a will, where there is no act of revocation shown by the evidence, declarations made by the testator subsequent to the execution of the will, tending to show that he had revoked such will, are inadmissible.

7. *Same; fact that proponent is not named as executor no ground for contest of probate.*—Upon the contest of admitting a will to probate, the grounds of contest must be of such character as that it involves the validity of the instrument itself, and the fact that the proponent was not the executor named in the instrument propounded for probate, does not constitute such a ground of contest, but simply puts in issue the right of the proponent to make proof of the will; and, therefore, being in the nature of a plea in abatement, the issue upon which should be tried before pleading to the merits, the contestant waives his right to insist that the proponent was not the executor named in the will by pleading to the merits either before or at the same time such ground was pleaded.

8. *Same; same; charge to the jury.*—In a proceeding to contest a will, where one of the grounds of contest is that the will was not legally executed, charges which pretermit all inquiry as to the due execution of the will as a ground of contest, or which takes from the jury the consideration of the due execution of the will are erroneous and should be refused.

9. *Same; judgment therein.*—In a proceeding to contest the probate of a will, where the jury returns a verdict in favor of the validity of the will, the court is without authority to omit from the judgment upon such verdict, certain items of the will, upon the ground that they were illegal and void for uncertainty; and a motion therefor is properly overruled.

APPEAL from the Probate Court of Limestone.

Heard before the Hon. JAMES E. HORTON.

The proceedings in this case were had upon a contest over the probate of the will of Mary Ann Walton. The will was propounded for probate by the appellee, John

41

H. Hundley, who, in addition to alleging in his petition the due and legal execution of the will by the testatrix, further averred that the appellant, James W. Woodruff, was a nephew of the testatrix, and that the other person, who is next of kin of the testatrix was Mrs. Bettie Hill, the wife of James A. Hill, who was a niece of the testatrix. James W. Woodruff contested the probate of the will upon the following grounds:

"3. That said instrument was procured by fraud and undue influence exerted upon said Mary A. Walton, deceased.

"4. That said instrument was revoked by said Mary A. Walton by another instrument in writing subsequently executed by said Mary A. Walton in the presence of witnesses as required by law.

"5. That at the date of said instrument in writing said Mary A. Walton's physical and mental condition was such as to render her incapable of executing a valid last will and testament.

"6. That said instrument in writing was revoked by said Mary A. Walton by tearing the same apart with the intention of revoking it.

"7. That the said petitioner, John H. Hundley, is not the person named as executor in the said instrument purporting to be the last will and testament of the said Mary Ann Walton, deceased, neither is he one of the devisees or legatees named therein, or interested in the estate of said decedent."

There were demurrers interposed to the several grounds of the contest, upon the grounds that they were not sufficient, and were merely the expression of opinion or conclusion of the pleader, and showed no ground for not admitting the will to probate. These demurrers were overruled. There was a motion made by the proponent to strike the seventh ground of contest, upon the ground that it does not contain or set forth any valid objection to the probate of the will. This motion was overruled.

Upon the trial of the cause, the will, which was offered for probate, was introduced in evidence. The manner of its signature is set forth in the opinion. The

will, after providing for legacies and making devises of the property owned by the testatrix in the first thirteen items thereof, then contained the following provisions: "Item 14th. The balance of my real estate consists of a plantation containing about 600 acres, more or less, known as the Oakwood Place, and upon which is situated the family graveyard. I give and bequeath this land (with the exception of the graveyard, containing four acres), to John Hundley, G. W. Mitchell and James Sloss, in trust, to rent the same, and apply the proceeds to such objects of charity and benevolence as the Presbytery of the State of Alabama of the Cumberland Presbyterian Church may indicate or designate, and should this devise fail, then the said trustees shall apply the proceeds to the maintenance and education of young men preparing for the ministry of the Cumberland Presbyterian Church, or in any other Protestant church. Said young men to be selected by said trustees or any two of them. I add to this legacy the residuum of my estate.

"Item 15th. Out of the rents of Oakwood, I will and desire that said graveyard be kept up, in its fencing, so as to enclose said four acres decently, and to keep the right of way in good condition and repair."

Item 17 was as follows: "Item 17th. I hereby nominate and appoint John Hundley executor of this my last will and testament."

The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently set forth in the opinion.

Among the charges given by the court at the request of the proponent, to the giving of which by the jury the contestant separately excepted, were the following: (4.) "You can only consider the grounds of contest provided by the statute, and they are as follows: 'By burning, tearing, cancelling or obliterating the same, with the intention of revoking it, by the testatrix herself, or by some person in her presence and by her direction, or by some other will in writing, or some other writing subscribed by the testatrix and attested as provided by law.' The foregoing are the only grounds of contest of

[Woodruff v. Hundley.]

wills provided by law, and I, therefore, charge you that they are the only grounds to which you can look in determining the revocation of the will propounded. You can not consider whether the proponent is executor or not. This has nothing to do with the validity of the will, or with this case." (5.) "A will having been duly executed, evidence to show that the testator entertained thoughts of or contemplated changes, alteration or revocation thereof, can not affect the validity of such will, in its integrity, or in any of its parts until there is a change, alteration or revocation, in the mode appointed by law, the legal presumption is, that the result of all thought and contemplation of Mary Ann Walton was a determination to adhere to the will as executed." (11.) "The word 'witness' opposite the names of subscribing witnesses, who are shown to be dead, constitutes a sufficient attestation under our law."

After the verdict was rendered by the jury in favor of the proponent, the contestant made the following motion: "Comes the contestant, James W. Woodruff, and moves that the court in entering up its judgment admitting to probate the paper propounded in this cause as the last will and testament of Mary A. Walton, deceased, omit item 14 and also item 15 of said paper because the disposition which said items 14 and 15 purport to make are illegal and invalid and the devise attempted to be made by said items is void from uncertainty and does not constitute a valid charitable trust."

The proponent moved to strike this motion from the file on the ground that the court had no jurisdiction to entertain or decide such motion, and because no such issue as that sought to be set up by said motion was made in the cause. The motion to strike was sustained and to this ruling the contestant duly excepted.

There was judgment in favor of the proponent, allowing the will to be probated. The contestant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

R. W. WALKER, MILTON HUMES and W. T. SANDERS, for appellant.—It is submitted that there was an entire

[Woodruff v. Hundley.]

absence of evidence tending to show that the paper offered as a will was "attested by at least two witnesses who subscribed their names thereto in the presence of the testator."—Code, § 4263. No one could say that the evidence would warrant the inference that as a matter of fact either E. M. Hussey, A. A. East or M. Baxter signed his name in Miss Walton's presence. There is absolutely no proof that either of those persons signed in the presence of any one else. If the requirement stated in section 4263 of the Code necessitates a showing that "at least two witnesses subscribed their names thereto in the presence of the testator," there was a fatal deficiency of proof in this case. Such proof was entirely dispensed with by the rulings of the lower court. To sustain these rulings the court must affirm the proposition that there are cases in which the law does not require proof of the fact that at least two witnesses subscribed their names in the presence of the testator, and that this is such a case. Section 4276 of the Code was relied on as supporting this proposition. That section does not create a statutory presumption of the due execution of a will where proof is made of the handwriting of the alleged testator and of one of two other persons who subscribed their names on the same sheet with the alleged testator, if such persons be dead, insane, or out of the State, or have become incompetent, though the paper itself does not indicate that they signed as attesting witnesses in the sense of the statute, and though there is no testimony or circumstance from which the inference could be drawn that as a matter of fact two witnesses subscribed their names in the presence of the testator. The effect of that section, so construed, would be that if a paper testamentary in form is found, subscribed by a decedent and by two other persons, who are dead, insane, absent from the State or incompetent, the paper must be admitted to probate as a will in this State, no matter in what part of the world it may have been subscribed, and though there is no hint that such person signed their names in the presence of anybody. No decision of this court supports the idea that section 4276 of the Code creates any such legal presumption. The

three cases of *Hall v. Hall,* 38 Ala. 131; *Snider v. Burks,* 84 Ala. 52, and *Barnwell v. Murrell,* 108 Ala. 356, do not support the proposition.

A consideration of the state of the law before this statute was enacted makes it plain that the purpose of its enactment was merely to provide the number of witnesses to be examined to prove the execution of wills required to be witnessed, and the number of signatures to be proved when the testimony of the witnesses could not be had.—*Bowling v. Bowling,* 8 Ala. 538; 29 Amer. & Eng. Encyc. of Law, 199; 6 Lawson R. R. & P., §§ 3199, 3200; 32 Amer. Rep. 650; 25 N. Y. 429, note. In no case will the presumption of compliance with the statutory formalities recited arise unless the will appears upon its face to have been duly executed.—29 Am. & Eng. Encyc. of Law, 202; Schouler on Wills (2d ed.), § 347; 1 Jar. on Wills, (5th ed.), § 86; same, (6th ed.), § 92, pp. 123, 124; 1 Redfield on Wills, (4th ed.), 234.

The undisputed evidence shows that the alleged will was found with its sheets separated, bearing evidence of having been once fastened together. One of the modes of revocation provided by section 4265 of the Code is "tearing—with the intention of revoking."—29 Amer. & Eng. Encyc. of Law, 274, note 4. The slightest act of tearing or cutting with intention to revoke is sufficient. 29 Am. & Eng. Encyc. of Law, 270, note 2. The jury might well and properly infer from the physical aspect of the paper itself that it was once sewed together, and cut apart by the testatrix.

When the decedent used the expression to the witness Martin that she had revoked that will, which expression the contestant sought to introduce in evidence, the presumption was and is that she knew the law, and that the revocation referred to by her was in the manner prescribed by the statute, and her declarations on this point were proper matters for the consideration of the jury, and constituted important testimony on contestant's behalf. Especially was the testimony admissible, as the same was offered by contestant limited and restricted to its bearings upon the physical condition of the paper propounded at the time the same was found.—*Law*

·v. *Law*, 83 Ala. 423; 1 Jarman on Wills, (5th ed.), Bigelow), 133, note b; 1 Greenleaf Evidence, (14th ed.), § 273; *Weeks v. McBeth*, 14 Ala. 474; Schouler on Wills, § 431; 29 Amer. & Eng. Encyc. of Law, 326.

THOMAS C. McCLELLAN, HARRIS & EYSTER and OSCAR R. HUNDLEY, *contra.*—The court did not err in sustaining proponents' demurrers to the third ground of contest. That ground was too vague, indefinite and uncertain, and did not, in any manner, conform to the most elementary rules of pleading.—*Barksdale v. Davis*, 114 Ala. 623.

The court did not err in its rulings upon the questions and answers propounded to the witnesses O. R. Hundley, J. W. Martin, R. A. Nichols and W. G. Martin. The evidence tended to prove the signature of the testatrix to the instruments propounded.—Code, §§ 4276, 4277; *Barnewell v. Murrell*, 108 Ala. 366; *Snider v. Burks*, 84 Ala. 53; *Hall v. Hall*, 38 Ala. 131.

There can be no doubt that the genuineness of the signatures was established. The general charge upon the proof of due execution of the will should have been given.—Code, §§ 4263, 4276, 4277; *Snider v. Burks*, 84 Ala. 52. The will in this instance purports to be duly signed, attested and witnessed, and the presumption is that the will was legally executed, that the details of the statutory requirements were complied with, unless the contrary was proven.—1 Jones on Evidence, 89, 90, 91. and notes and cases cited; *Hughes v. Hughes*, 31 Ala. 519; *Snider v. Burks*, 84 Ala. 53; *Barnwell's Case*, 108 Ala. 366; *Dupree v. Dupree*, 45 Ga. 415.

The word "witness" written by Judge East under his name also stands "against" the names of A. A. East and M. Baxter and above the name of E. M. Hussey; and the will upon its face is a sufficient compliance, and should give rise to the presumption that the will was duly executed.

By leaving out of consideration any presumption that the face of the instrument may raise or justify as to its due and legal execution, the compliance with all formalities of the statute, the court committed no error in

allowing the will to go to the jury and submitting the question of execution to be by them determined under the facts and circumstances shown before them.

Section 4263 of the Code provides the method of making a valid will in Alabama. There must be a writing; there must be a signing by the testator; and there must be an attesting and subscribing by two witnesses, who must subscribe their names in the presence of the testator. Without these no will is effectual to pass property in this State. No attempt is made by the appellee to evade this plain statute. Then, in the wisdom of those who framed the law of wills in Alabama, provision was in proper order made for the natural, the most natural occurrences and misfortunes which befall the human family. It was of course anticipated that witnesses to wills would die; that they would become insane, or would move away from the place where the will was made, or would become otherwise incompetent. The commonest prudence dictated these most natural apprehensions of our misfortunes. Hence, sections 4276, 4277 of the Code of Alabama were crystalized into the law of wills of this State.

And it may be suggested that to hold that it was incumbent in this case upon the proponent to show by affirmative evidence that Miss Walton saw the witnesses sign, or that they signed in her presence as such, would certainly annul the sections of the Code quoted, and legislate into the law of wills in Alabama that an attestation clause is absolutely necessary where the witnesses are liable to die, become insane or leave the State. And then, an attestation clause being subject to be contradicted or impeached by evidence aliunde, what could any citizen promise himself in the making of his will that it would stand as it was intended to stand after his death. Such holding would defeat the primal reason for wills and permit death to break down a will when the law and the desires of mankind legalize and make wills to survive death.—Code, §§ 4276, 4277; *Barnewall's Case*, 108 Ala. 366; *Snider v. Burks*, 84 Ala. 53; *Hughes' Case*, 31 Ala. 519.

TYSON, J.—The testatrix, a resident of Alabama, went to a hospital in the city of Nashville, Tenn., for the purpose of having a surgical operation performed. Apprehending that the operation might be fatal, she had a lawyer of that city to prepare the paper propounded for probate as her last will and testament, which she signed in his presence and which he subscribed as a witness in her presence. The paper was left with her with instructions to have at least two other persons subscribe their names as witnesses.

There appears upon this paper in connection with the word "witness" (to the right of it), which word was written by the lawyer who prepared the paper, directly opposite to it, one name, and under that name another name. To the left of these names and on the line immediately below, the name of E. M. Hussey appears. The first two names were those of the two physicians who were to perform the operation, and were in attendance upon the testatrix, and who are shown to have had knowledge of the preparation of the will. The third was the name of a physician who was an inmate of the hospital at the date of the signing of the instrument, and a friend of the testatrix. These three physicians are dead and there was proof of the genuineness of their signatures as well as that of the testatrix. No witness to the paper propounded for probate, except the first, who did not see the others attest it, saw the testatrix sign it. But this is of no moment, as it is not necessary that the witnesses should actually see the testatrix sign her name. An acknowledgement by her to them of her signature to the instrument is sufficient.—2 Greenleaf on Ev. (16th ed.), § 676. On this proof of the execution of the instrument, the court admitted it in evidence against the objection of the appellant. The point of objection taken is, that there was an entire absence of proof that two witnesses subscribed their names as witnesses in the presence of the testatrix.

One of the essential requisites to the validity of the instrument as a will, is that it must be attested by at least two witnesses who must subscribe their names thereto in the presence of the testator.—Code, § 4263. Unless this requisite of the statute was complied with,

the instrument was ineffectual to pass real or personal property. It was not a will at all within the purview of the statute, and cannot be admitted to probate. Proof of this essential requisite is just as necessary in order to probate the paper as a will as was a compliance with the statute necessary to give validity to it. Nor do sections 4276-4277 of the Code dispense with the necessity of making this proof.

In speaking of section 4276, this court said in *Barnewall v. Murrell*, 108 Ala. 381: "The statute was intended to prescribe, and prescribes a definite rule, regulating the admission of that which may be appropriately termed secondary evidence, when the primary evidence of the execution of wills is not attainable. The proper construction of its words, and their real sense and meaning is, that if any one or more of the subscribing witnesses, because of the events or the disabilities mentioned, cannot be produced, there may be a resort to the secondary evidence for which it provides, the equivalent in degree of the unattainable primary evidence." And it may be added that these two sections are nothing more than a legislative declaration of the common law rule.—1 Greenleaf on Ev. (16th ed.), § 572.

The requirement of the statute that the signature of the testator must be "attested by at least two witnesses who must subscribe their names thereto in the presence of the testator," so far as the question here involved is concerned, is substantially the same as was the language employed in the English Statute of Frauds, (29 Charles, 2, C. 3, § 5), from which it was borrowed, and is identical in language with many of the statutes of other states.

The question under consideration has been frequently passed upon by the English and American courts. Where the attestation clause is complete, reciting the facts showing a compliance with all the requirements of the statute, it seems that it has been universally held that the presumption will be indulged, upon proof of the genuineness of the handwriting of the testator and of the witnesses when dead, that all the requisites of the

statutes have been complied with, unless the contrary appears on the face of the will.—1 Redfield on Wills, p. 238 and note; Schouler on Wills, § 347; 29 Am. & Eng. Encyc. Law, p. 199; 1 Underhill on Wills, p. 276, § 201, note 1.

The only evidence of attestation of the will before us, appearing on the face of the instrument, is the word "witness" and the subscription of the names of the witnesses. In other words, there is no recitation that the witnesses subscribed their names in the presence of the testatrix.

The statute does not require the attestation clause. Hence its complete omission would have no effect upon the validity of the will. A fulfilment of the statutory requirements is all that is necessary and this may be proven without any recital of the fact in the will or in an attestation clause attached to it. No particular form of words is essential to constitute an attestation.—1 Jarman on Wills, *p. 91, top p. 123. And indeed "the word 'attest' or 'witness' or some similar expression, not fully stating a compliance with all the statutory requirements will answer the purpose."—1 Underhill on Wills, p. 275, § 200 and notes.

In *Croft v. Pawlet*, 2 Strange, 1109, the attestation clause was in these words: "Signed, sealed, published and declared as and for his last will, in the presence of us, A. B. and C." The witnesses were all dead and the genuineness of their signatures was proven. "It was objected, that this was not an execution according to the statute of frauds; and the hands of the witnesses could only stand to the facts they had subscribed to, and signing in the presence of the testator was not one." The court held it was evidence to be left to the jury of a compliance with all circumstances. The attestation clause was in the same language in *Hands v. James*, Comyn, 531. The witnesses were dead and there was proof of their signatures. The same objection was urged against the sufficiency of the proof of the execution of the will as was in *Croft v. Pawlet, supra*. The court said: "These witnesses have set their names and it must be intended they did it regularly."

In the case of *John Johnson*, 2 Curties' Ecclesiastical Rep. 341, the testator executed his will while in India, which was attested by two witnesses, but it did not appear upon the face of the paper that the requisites of the act had been complied with. The court assumed that the will was duly executed.

In *Trott and Trott v. Skidmore*, 2 Swabey & Tristam's Rep. 12, the will was in the handwriting of the testator and written 1832. The attestation was "Witnesses," followed by the names, which was dated April 11, 1838, and written in different colored ink. Both the witnesses were dead, and their names were in their respective handwriting. No account was given of the manner in which the will was executed. The court said: "The difference of the color of the ink in which the names of the attesting witnesses are written might have been caused by blotting paper being used to one, and not to the other. At all events it is too slight a circumstance to found any presumption on; and on the facts as proved, the usual presumption *omnia rite esse acta* must prevail."

The principle announced in these cases has been approved and followed by the courts of this country as will be shown by an examination of the following cases: *Nickerson v. Buck,* 12 Cush. 332; *Ela v. Edwards,* 16 Gray, 91; *Elliott v. Elliott,* 10 Allen, 357; *Jackson v. Christman,* 4 Wend. 277; *Clarke v. Dunnavant,* 10 Leigh, 13; *Deupree v. Deupree,* 45 Ga. 415; *Fatheree v. Lawrence,* 33 Miss. 585.

The presumption of due execution, however, is not one of law, but of fact which the jury may indulge. It is a question, then, for the jury to determine whether all the requisites of the statute have been complied with. There was no error in admitting the will in evidence.

These principles have been recognized and enforced by this court in the case of *Arrington v. Arrington,* 122 Ala. 510, involving the proof of the execution of a deed.

By agreement of counsel the original will is before us for examination. One of the grounds of contest is that it was revoked by the testatrix by "tearing the same apart with the intention of revoking it."

Section 4265 of the Code provides that "except in the cases provided in the preceding article, a will in

writing can only be revoked by burning, tearing, can-
celling or obliterating the same, with the intention of
revoking it, by the testator himself or by some person
in his presence," etc. When the will was written and
signed by the testatrix it was upon two separate
sheets of paper, and there is no evidence except from
the holes near the top and sides of the sheets that they
were ever fastened together. And if fastened together
there is no evidence that the fastening was done by the
testatrix unless it may be inferred from her possession
of it. So, too, there is no evidence that the sheets were
ever separated by her, if it be inferred that they were
once attached, except that after her death, when the
will was found in a box in the bottom of her trunk,
carefully folded, and wrapped in a newspaper, around
which was pinned a towel, upon which her name was
written, the sheets were apart and there were no fasten-
ings in the holes. So, then, the only evidence of a de-
tachment or separation of the sheets, if it be conceded
that they were fastened together by the testatrix, is
the physical appearance of the paper itself. This at-
tachment of the sheets, it is evident from an inspection
of the holes, was by the means of pins—two of them
inserted near the top and each side of the sheets.

A revocation, of necessity, implies the existence of
a valid will—a vacating of an instrument previously
executed, effectual as a will. And its existence is pre-
sumed until rebutted by proof of its subsequent revo-
cation.—2 Greenleaf on Ev., § 680. It is of no conse-
quence that this will was written upon separate sheets
of paper. And had these sheets remained disconnected,
this would not have been an objection to its validity or
afforded an inference of its revocation by the testatrix.
*Barnewall v. Murrell*, 108 Ala. 366. Conceding that
the pins which constituted the means of fastening the
sheets together were placed there by the testatrix and
removed by her, thereby restoring the paper to the
condition in which it was when signed by her, did this
amount to a *tearing of the will*, within the meaning of
the statute? Not a syllable, word, phrase, or sentence
of the will was erased, torn or disturbed. Every word
as written was preserved. Indeed, the sheets of paper

upon which the writing was done, with the exception of the pin holes and the traces made upon them by the ravages of time, were in the same condition when found after the testatrix's death as when the words of the will were traced upon them by the pen of the scribe, executed by the testatrix and subscribed by the witnesses.

In *Law v. Law*, 83 Ala. 434, it is said: "That no revocation can be effected by mere word of mouth, or nuncupative declaration, any more than could be done under the English Statute of Frauds. It requires one or more of the specific acts mentioned in the statute—a burning, tearing, cancelling or obliterating, with the intention to revoke, or a new will or codicil, properly executed and attested. To what extent an obliteration of the instrument must extend to be effectually revocatory, cannot be stated with any great degree of particularity. The paper must certainly be materially mutilated, so that, if unexplained by accompanying declarations, an intent to revoke may be inferred from its appearance, taken in connection with the act itself. As said in *Evans' Appeal*, 58 Penn. St. 238, the act done to the *will* must be one which 'stamps upon it an intention that it [the paper] shall have no effect,'—'an act done to the paper itself, a mark upon it, evincible of a present intent that it shall not operate as a will.'"

Revocation is an act of the mind which must be demonstrated by some outward and visible sign. As said by a learned judge: "All the destroying in the world without intention will not revoke a will, nor all the intention in the world without destroying: There must be two."—*Cheese v. Lovejoy*, 2 Prob. Div. 251.

It is not the mere manual operation of tearing the instrument which will satisfy the law; the *act* must accompany the intention of revoking; there must be the act as well as the *animus*, both must concur in order to constitute a legal revocation.—*Clark v. Scripps*, 2 Rob. Ecc. Rep. 563; *Reed v. Harris*, 6 Ad. & El. 209;

*Clark v. Smith,* 34 Barb. 140; *Hoitt v. Hoitt,* 63 N. H. 475

We are clearly of the opinion that the removing of the fastenings by the testatrix was not a tearing of the *will* within the meaning of the statute. As there was no tearing of the will, it is of no consequence what may have been the unexecuted intention of the testatrix to revoke it.

All declarations of the testatrix subsequent to the making of this will tending to show that she had revoked it, were clearly incompetent, no act of revocation having been shown.—*Barnewall v. Murrell, supra; Clark v. Smith, supra; Waterman v. Whitney,* 1 Kernan, 157; *Hoitt v. Hoitt, supra,* and authorities there cited; 2 Greenleaf on Ev., § 690; 1 Redfield on Wills, 543; 29 Am. & Eng. Encyc. Law, 326.

The seventh ground of contest is that the petitioner is not the executor named in the instrument propounded for probate, neither is he one of the devisees or legatees named therein or interested in the estate of the decedent.

It may be and it is doubtless true that only an executor, devisee or legatee named in a will or some person interested in the estate has the authority to have the will proved before the probate court.—Code, § 4272. But upon a contest of a will before the probate court, the grounds of contest are that the will was not duly executed, the unsoundness of mind of the testator, or any other valid objections thereto.—§ 4287. The other valid objections must be of the character as that involves the validity of the instrument itself. The only judgment authorized to be rendered is one against the validity of the will or one sustaining its validity.—§ 4293. The ground of contest under consideration presents no such objection. Indeed the will may be valid without any one being named as executor. Nor would the death of the person named as executor affect its validity. This ground simply puts in issue the right of the proponent to make proof of the will; in other words, his right to propound it for probate. It is in the nature of a plea in abatement, and raised an issue which should have been tried before pleading to

the merits. By pleading to the merits, either before or at the same time this ground was pleaded, the contestant lost his right to insist upon it. He waived his right to insist preliminarily that the proponent was not the executor named in the will.—1 Encyc. Pl. & Pr. 32; *Hurt v. Turk*, 15 Ala. 675. The proponent's motion to strike this ground of contest should have been granted.—*Brown v. Powell*, 45 Ala. 149.

Many of the numerous assignments of error are based upon the rulings of the court in admitting and excluding evidence offered in support of and against the issue raised by this ground, and upon the giving and refusing of charges requested relative to that issue. So, too, a great many exceptions were reserved by the contestant to the admission of evidence against his objection and to the exclusion of evidence offered by him, upon the question of revocation of the will by the testatrix. However, we will not further consider any of these matters, as the questions growing out of them will probably not arise upon another trial.

Charge 4, given at the request of proponent, pretermits all reference to the due execution of the will as a ground of contest and was faulty in this respect if in no other.

Charges 5 and 11, given at the instance of proponent, were improper. They tend to take from the jury the question of the due execution of the will, which was a matter exclusively for their determination.

After the verdict of the jury was rendered, the contestant moved the court to omit from the judgment upon the verdict the provisions of the will contained in items 14 and 15, because they were illegal and void for uncertainty and do not constitute a valid charitable trust. It is obvious that this simply involves a construction of those clauses, and was entirely foreign to the proceeding in which the court was required to enter judgment upon the verdict of the jury. The court was without jurisdiction to entertain the motion.

With the seventh ground of contest eliminated by striking it, as the court before entering upon another trial should do, and there being no revocation of the will shown, nor any evidence tending in the remotest

degree to show mental incapacity to make it or undue influence exercised in , procuring its execution, the issue is narrowed to the single one, of due execution. And this the proponent is entitled to have the jury determine upon making proof of the genuineness of the signature of the testatrix and of the signatures of two of the subscribing witnesses.

For the errors pointed out the judgment must be reversed and the cause remanded.