CRAWLEY, Judge.
Marcia Lee Baldwin Winter (“Winter”) filed a will contest, alleging that the decedent, Marcella Baldwin (“Baldwin”), lacked the requisite mental capacity to execute a will and had been unduly influenced in the execution of her will and a subsequent codicil. SouthTrust Bank, the executor (“the Bank”), filed a motion for summary judgment. In response to the Bank’s motion, Winter alleged that the will had been revoked. The trial court denied the Bank’s motion for summary judgment. After a non-jury trial, the court found that Baldwin had revoked her will. The trial court considered this finding dispositive and, therefore, did not reach the questions of mental capacity and undue influence. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
The Bank raises three issues on appeal: (1) whether the trial court erred in finding that Baldwin had revoked her will by placing it in a sack with other personal papers; (2) whether the trial court should have determined whether Baldwin had testamentary capacity at the time of the execution of her will and codicil; and (3) whether the trial court should have found that Baldwin was not unduly influenced when she executed her will and codicil.
Baldwin died on January 3, 1992, at the age of 89. She was survived by her adopted *70 daughter, Winter, who lived in Oregon with her family. Baldwin had lived alone in her home since her husband’s death in 1968. According to the testimony, Baldwin and Winter’s relationship was tenuous, at best, most of their lives. Baldwin visited Winter on several occasions until on one visit Winter’s husband told Baldwin she had outstayed her welcome. Baldwin was very angry and never traveled to Oregon to visit Winter again. Winter did visit with Baldwin several times between that visit and her mother’s death in 1992. Winter’s children did not visit Baldwin except on one occasion when Winter, accompanied by her 15-year-old son, visited Baldwin. Baldwin had requested that Winter send her daughter to live with Baldwin and attend school in Alabama, but Winter refused this request.
Several of the witnesses described Baldwin as “manipulative.” These witnesses also testified that Baldwin would tell people she intended to leave them something in her will in exchange for these person’s performing some service for Baldwin. These witnesses also acknowledged that although Baldwin was manipulative, she could not be manipulated.
Baldwin’s grandnieces, Andrea and Susie Brown, testified at the trial. Both nieces had fond memories of Baldwin and related a visit they had with Baldwin in the spring of 1975. They visited Baldwin at her home in Birmingham for two weeks. They testified that Baldwin was like a grandmother to them. Both nieces corresponded with Baldwin, one more frequently than the other. While they were visiting with Baldwin, Baldwin inquired what items of Baldwin’s property they might want upon Baldwin’s death. Andrea commented that she loved Baldwin’s house.
On September 23, 1975, Baldwin executed her will. Paul Woodall prepared the will and witnessed its execution. The will left three-fourths of the residuary estate to Winter and her family. The remaining one-fourth of the residuary was left to the Industrial Design Laboratory of Auburn University. Baldwin’s residence was bequeathed to Herbert Darnell for one year and then to Andrea and Susie Brown. The will also provided for specific bequests of personalty to certain of Baldwin’s friends.
In 1980, Baldwin executed a codicil, which was prepared and witnessed by Anne Mitchell. Mitchell testified at trial that she discussed the terms of both the will and the codicil with Baldwin at the time the codicil was executed. Mitchell stated that Baldwin had reasons for every disposition of property that she made. Mitchell also testified that she had no doubts regarding Baldwin’s testamentary capacity. Mitchell testified that the codicil provided that Andrea and Susie Brown were to receive Baldwin’s home immediately upon Baldwin’s death. Pursuant to the codicil, Winter and her family received three-fourths of the residuary, with the remaining one-fourth to go to Lindenwood College in Missouri.
Baldwin’s will was not located until several days following her death. Roberta Harkins testified at trial that she found the will while she was organizing and appraising items in Baldwin’s estate for the county administrator. The will and codicil were located in a paper sack in a hallway closet area that Baldwin referred to as “trash alley.”
Felix Yarboro, the director of community ministries at Independent Presbyterian Church, testified at trial that he began visiting Baldwin and assisting her in her personal affairs in 1989. Yarboro testified that Baldwin told him that she did not intend for her grandnieces to receive the house, but that she had bequeathed the house to them to make Marcia (Winter) mad. Yarboro also testified that Baldwin told him that she had “thrown away” her will and that she needed a new one. She provided Yarboro with a handwritten list of her property and specific bequests of personalty. Yarboro then typed the list and mailed it to an attorney, Vernon Patrick. Baldwin, however, never got a new will drafted and signed. With regard to the “trash alley,” Yarboro stated that most of the items in there were to be discarded. Yar-boro disposed of only the papers Baldwin instructed him to discard. Yarboro testified that two sacks remained in the “trash alley” the entire time he assisted Baldwin with her personal affairs.
*71 Mattie Ruth Rucker, Baldwin’s housekeeper for almost 20 years, testified that Baldwin told her quite a few years ago that Baldwin’s will was in a basket next to her bed. Rucker testified that she never knew if Baldwin moved the will from the basket to another location.
Percy Lewis, Baldwin’s yardman, testified that Baldwin also indicated to him that she intended to leave everything to Marcia (Winter). Lewis stated that he understood Baldwin to mean that she wanted Winter to come live with her and help her with her affairs and then she would give everything to Winter. Baldwin always told Lewis that he was mentioned in her will; however, Baldwin made no specific bequest to Lewis in her will.
Following the presentation of all the evidence, the trial court determined that Baldwin had revoked her will because, it found, she effectively canceled the will and took steps toward making a new will. The trial court held that the act of placing the will in the “trash alley” was an act of “cancellation” or “abandonment,” as those words are defined in Black’s Law Dictionary. The trial court found that Baldwin abandoned her will by placing it in the trash and taking steps toward making a new will. The trial court further found that the evidence clearly supported a finding that Baldwin intended to revoke the will and codicil and to make new provisions for the disposition of her property. We must determine if the trial court correctly concluded that, as a matter of law, the placement of the will in a paper sack located in an area referred to as a “trash alley” constituted an act of revocation. We conclude that the court erred.
‘Where evidence is presented to the trial court ore tenus, the court’s findings of fact based on that evidence are presumed correct and those findings will not be disturbed on appeal unless they are clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.” Jasper City Council v. Woods, 647 So.2d 723, 726 (Ala.1994). However, when the trial court applies the law to the facts, no presumption of correctness exists as to the court’s judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala.1994). See also Beavers v. County of Walker, 645 So.2d 1365 (Ala.1994).
Ala.Code 1975, § 43-8-136, provides the only method by which a will may be revoked. Therefore, the 1975 will should have been admitted to probate unless it was effectively revoked by strict adherence to . that Code section. This section provides the method for revoking a will:
“(a) A will or any part thereof is revoked by a subsequent will which revokes the prior will or part expressly or by inconsistency.
(b) A will is revoked by being burned, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in his presence by his consent and direction. If the physical act is by someone other than the testator, consent and direction of the testator must be proved by-at least two witnesses.”
This section contemplates two essential elements in revocation of a will: “[tjhere must be 1) performance of one or more of the specified acts to a degree that materially and permanently destroys the efficacy of the document, and 2) the testator must intend for the act to revoke the will.” Board of Trustees of the University of Alabama v. Calhoun, 514 So.2d 895, 897 (Ala.1987). “One without the other is insufficient to effectively revoke a will.” Id.
Whether the act of placing a will in a paper sack with other items of trash constitutes an act of revocation has not been addressed by this court or by our supreme court. In Law v. Law, 83 Ala. 432, 434, 3 So. 752, 753 (1888), our supreme court stated:
“[N]o revocation can be affected by mere word of mouth, or nuncupative declaration, any more than could be done under the English statute of frauds. It requires one or more of the specific acts mentioned in the statute — a burning, tearing, canceling or obliterating, with the intention to revoke, or a new will or codicil, properly executed and attested.... As said in Evans Appeal, 58 Pa.St. 238, [will had been revoked where the signature of the testa *72 tor had been erased from the end of the document] the act done to the will must be one which ‘stamps upon it an intention that it [the paper] shall have no effect; an act done to the paper itself, — a mark upon it, — evincible of a present intent that it shall not operate as a will.’ ”
The court further stated that in order for a will to be revoked, the paper must be materially mutilated so that an intent to revoke could be inferred from the appearance of the document. Id.
This language has been followed by our supreme court in numerous cases. In Woodruff v. Hundley, 127 Ala. 640, 653-55, 29 So. 98, 102 (1900), our supreme court held that the removal of fastenings holding a will intact was not a “tearing” of the will sufficient to constitute a revocation. The court stated that “[Revocation is an act of the mind, which must be demonstrated by some outward and visible sign.” 127 Ala. at 655, 29 So. at 102. The court noted that there must be both an act and the intent to revoke in order to constitute a legal revocation. Id. In Allen v. Scruggs, 190 Ala. 654, 673-74, 67 So. 301, 308 (1914), the court reiterated the principles enunciated in Law v. Law, supra, and Woodruff v. Hundley, supra, and held that there had been no revocatory act by the testator, although he had made several declarations that he destroyed his will. 190 Ala. at 673-74, 67 So. at 308. The court concluded that the contestants had failed to meet their burden of proof to establish a revocation of the will. Id.
A ease that discusses the cancellation of a will in order to establish revocation of the will is Franklin v. Bogue, 245 Ala. 379, 17 So.2d 405 (1944). In that case, the testator had handwritten his will in the presence of two witnesses. Across the face of the will, just to the right of the testator’s signature, were the words, “annulled, void, see will of date of 11/24/39.” 245 Ala. at 383, 17 So.2d at 408. The probate judge determined that the testator’s intention, indicated by his writing the words “annulled” and “void” on the will, was to cancel the will. The circuit court disagreed. On appeal, the supreme court reversed, holding that a will may be revoked by cancellation or obliteration and that the words “annulled” and “void,” written on the face of the will in the testator’s handwriting, constituted a sufficient act of revocation. 245 Ala. at 383, 17 So.2d at 408-409.
Both parties rely upon Board of Trustees of the University of Alabama v. Calhoun, 514 So.2d 895 (Ala.1987), in support of their position. In that case, our supreme court addressed the issue whether the removal of the signature page of the will is an act sufficient to revoke the will. It answered in the affirmative, relying primarily on the fact that an essential requirement of a valid will is the signature of the testator. Id. at 897. See also Ala.Code 1975, § 43-8-131.
We also note a recent case discussing the revocation of a will. In Harrison v. Bird, 621 So.2d 972 (Ala.1993), the testatrix’s original will was retained by her attorney and a duplicate was given to a named beneficiary. The testatrix telephoned her attorney and advised him that she wanted to revoke her will. Thereafter, the attorney or his secretary, in the presence of the other, tore the will into four pieces. The attorney wrote the testatrix, informing her of his actions, and enclosed the four pieces of the will in the letter so the testatrix could verify that the original will had been tom. In the letter, the attorney specifically stated that the testatrix was now without a will. Our supreme court held, based upon these particular facts, that the testator had revoked her will. Id. at 973.
The facts of our present case are unlike any of the facts of the above-referenced cases. Baldwin’s will was located intact. The signature page was not removed, nor was the signature erased. Baldwin had not written any words on the document to indicate an intent to revoke the will. Essentially, nothing was done to the will except that it was placed in a paper sack with other documents. Baldwin never instructed anyone to discard this particular paper sack, as she did with regard to the other paper sacks kept in “trash alley.” The cases all support a rationale that some act of revocation must be accomplished in order for the will to be revoked. The intent to revoke, alone, is insufficient to establish revocation. No act was done to Baldwin’s will. Therefore, we must conclude that, as a matter of law, the mere *73 placement of the will in the paper sack did not “materially and permanently destroy the efficacy of the document.” See Board of Trustees, supra. Accordingly, placing the will in the paper sack was not an act of cancellation or abandonment and did not constitute a revocation of the will.
The Bank urges this court to consider and dispose of the remaining issues, namely the issues of undue influence and testamentary capacity. We decline the Bank’s invitation. The trial court did not address these issues because it determined that the will had been revoked. Because we conclude that the trial court erred as a matter of law in determining that the will had been revoked, the ease is remanded for the trial court to consider the issues of undue influence and testamentary capacity. The trial court is the more appropriate forum for the resolution of these issues. Accordingly, we reverse the judgment and remand the case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THIGPEN and MONROE, JJ., concur.
ROBERTSON, P.J., and YATES, J., dissent.