CHIEF JUSTICE LINDSAY
delivered the opinion op the court.
The indictment in this case charges that one Benjamin Osborn, in the county of Scott, on the 10th day of August, 1873, 'willfully and with malice aforethought, and not in self-defense, killed and murdered one Jerry Burns, by shooting him with a pistol; that said Osborn wás indicted therefor, arrested under the charge, and confined in the Scott County jail; that he unlawfully escaped from the custody of the jailer; and that the appellant Tully, knowing all these facts, “ did, on the 6th day of March, 1874, in the county aforesaid, willfully and feloniously, and for the purpose of enabling the said Osborn to make good his escape from custody and from answering said crime, furnish said Osborn with money to enable him to escape trial and punishment, and knowing when he did so that said money was procured for said purpose, and would so be *149 used; and did secrete and shield him for said purpose from all detection and arrest, and did conceal his whereabouts from the knowledge of all citizens and officers of the Commonwealth whose duty it was to arrest him, thus knowingly, willfully, and feloniously enabling him to make good his escape, and to go and remain to this day at large.”
The facts thus charged constitute the offense of accessory after the fact to the murder of Jerry Burns, and, if guilty, Tully may (under the provisions of section 11,- article 1, chapter 28, Revised Statutes) be punished by fine and imprisonment, at the discretion of the jury.
The indictment was returned by the grand jury of Scott County. On motion of the appellant the venue was changed to the Bourbon Circuit, where a trial was had, which resulted in a verdict of guilty and a judgment imposing a fine of $15,000 and confinement in the county jail for five minutes.
On this appeal the first question to be considered is, whether or not the Scott Circuit Court has jurisdiction of the offense. The murder of Burns was committed within the body of that county; but, according to the proof of the Commonwealth, the accessorial acts of furnishing money and assistance to the escaped murderer were done in the county of Logan.
It was a vexed question at the common law, when the principal felony was committed in one county and the accessorial acts done in another, in which, if in either county, the accessory could be tried and punished. On account of the existing doubt in this regard, Lord Hale said, “If a man were accessory before or after, in another county than where the principal felony was committed, at common law it was dispunishable.” (H. P. C., vol. 1, p. 623.)
Mr. East, however, was of opinion that “at common law the coroner might, upon view of the body where the fact happened, inquire of all accessories or procurers, though in another county.” (1 East’s P. C. 360.)
*150 The question was finally settled by section A, chapter 24, of the statute of 2 and 3 Edward VI, which provided “that where any murder or felony hereafter shall be committed and done in one county, and another person or more shall be accessory or accessories, in any manner of wise, to any such murder or felony in any other county, that then an indictment found or taken against such accessory and accessories, upon the circumstances of such matter, before the justices of the peace or other justices or commissioners, to inquire of felonies in the county where such offenses of accessory or accessories in any manner of wise shall be committed or done, shall be as good and effectual in the law as if the said principal offense had been committed or done within the same county where the same indictment against such accessory shall be found.”
This statute applied to and included as well accessories after as before the fact, and fixed the jurisdiction as to either offense by restricting it to the county in which the substantive accessorial acts were done. It is true, Mr. East says that after this enactment “it seems from some authorities that the election to try in either county still continues.” (1 East’s P. C. 361.) But Mr. Bishop takes a different view (Crim. Procedure, vol. 1, sec. 74), and Lord Hale, in construing the statute, says, “ If a man were accessory before or after, in another county than where the principal felony was committed, at common law it was dispunishable; but now, by the statute of 2 and 3 Edward VI, chapter 24, the accessory is indictable in that county where he was accessory, and shall be tried there as if the felony had been committed in the same county; and the justices, before whom the accessory is, shall write to the justices, etc., before whom the principal is attainted, for the record of the attainder.” (Hale’s P. C., vol. 1, page 623.)
In considering this question the Supreme Court of New York, in the case of Baron v. People (1 Parker, 246), said: “Our statute (2 R. S. 727, sec. 45) provides that the accessory *151 may be indicted and tried in the county where the offense of the accessory was committed, notwithstanding the principal offense was committed in another county. But there is no statute or rule of law allowing the accessory to be indicted and tried in the county where the principal offense was committed, unless his offense as accessory was committed there.”
If this New York statute was not regarded as but the mere legislative crystallization of the common law as modified by the statute of Edward VI, then the court was evidently of opinion that the common law, after being so modified, did not permit the accessory to be tried in any other county than that in which he committed the unlawful act; and in this conclusion we think it is supported by the decided weight of authority.
As early as 1796 the legislature of this state, following the example of Virginia, and pursuant to the common-law principle embodied in our state constitution, that a person accused of crime shall be entitled to “a speedy public trial by an impartial jury of the vicinage,” provided that “an accessory to murder or felony committed shall be examined by the court of that county and tried by the court in whose jurisdiction he became accessory, and shall answer upon his arraignment, and receive such judgment, order, execution, pains, and penalties as is used in other cases of murder or felony.” (1 Stat. Law, p. 530.)
So much of this statute as relates to the jurisdiction of the offense has never been expressly repealed. To this extent it was excepted from the repealing clause of the act adopting the Revised Statutes (subsec. 5, sec. 1, p. 177, vol. 1, Stanton’s Rev. Stat.), and to the same extent it is in perfect harmony with the 15th section of the Criminal Code of Practice, which provides that “the local jurisdiction of circuit courts and justice’s courts shall be of offenses committed within the respective counties in which they are held.”
It is immaterial whether resort be had to the act of 1796 *152 or the statute of Edward VI, which is common law with us, to ascertain at what place, in estimation of law, the offense of being an accessory to a felony is committed, we find it to be where the substantive accessorial act is done. We may here remark that the adoption of the General Statutes did not change this rule, it being therein provided that “all offenses shall be tried in the courts or by the tribunals of that county or city having jurisdiction of them in which they were committed, except in cases otherwise provided for.” (Chap. 29, art. 1, sec. 5.)
But the Commonwealth contends that the alleged offense of Tully was committed partly in Scott County, and that its court has jurisdiction under section 18 of the Criminal Code, which provides that when an offense is committed partly in one county and partly in another, or where the acts, or effects thereof, requisite to the consummation of the offense occur in two or more counties, the jurisdiction shall be in either county. But, taking the strongest phase of the testimony against Tully, we are of opinion there is no ground for holding that any part of the offense, or any act or the effect thereof requisite to its consummation, occurred in Scott County.
Osborn entered into the negotiations with Tully for the sale of his lands in Logan. Tully, before consummating the-purchase, made a trip to Scott, where the lands are situated, and examined into the title, and ind'uced a resident of Scott to return with him to Logan to identify Osborn, he being unacquainted with him. All this he did in his own interest, and not in the way of assisting the felon to secrete himself from the officers of the law, or to make good his escape from the jurisdiction of the court in which he stood indicted. Tully was no doubt making investigations to satisfy himself that he could make profit out of a contemplated violation of the penal laws; but he was not in Scott to assist, or to procure the means, or to do any thing in the preparation of the plan by *153 which the unlawful assistance was to be rendered to the fleeing criminal.
The acts done in Scott are to be regarded as the evidence of and not as part and parcel of the offense afterward consummated in Logan County. They are not of the same nature with the taking of the impression of a warehouse key in one county and sending it to another to have the false key manufactured; nor of preparing a forged instrument partly in one and partly in another county; nor of standing in one county and shooting a person in an adjoining county. None of Tully’s acts in Scott were strictly necessary to the crime committed in Logan, and therefore they will not support an indictment in Scott on the idea that they or any of them are parts or parcels of that crime. (1 Bishop on Criminal Proceedings, sec. 73.) And as appellant might have been indicted in Logan, and convicted on the proof offered by the Commonwealth, excluding all evidence touching his trip to Scott and his acts in that county, it is manifest none of said acts or their effects were requisite to the consummation of the offense, and this is the second test of jurisdiction prescribed by the 18th section of the Criminal Code. For these reasons the majority of this court are of opinion the court below should have instructed the jury to find for the appellant, when asked to do so, at the conclusion of the Commonwealth’s evidence.
The plea of the statute of limitations was clearly unavailing. The record exhibited shows that the indictment was returned by the grand jury within less than one year after the alleged unlawful acts were done, and although the first indictment was fatally defective, yet the prosecution has actually been on foot and has been continuously kept up since the return of that indictment.
The court erred in permitting the record of the trial had in Scott County to be read to the jury. It is part of the record of this prosecution, and could be used for no other purpose *154 than to show when the prosecution was commenced, and that it had been continuous. These were questions of law for the court to decide, and the substantive rights of the appellant were prejudiced by having the facts of his former trial and conviction proved to the jury. The clerk states in a note that the first verdict and judgment were not read to the jury; but even if this statement be treated as legal evidence to this court of that fact, still there was enough in the record outside of the verdict and judgment to show he had been tried, convicted, and sentenced to punishment in Scott County. It is also true the court told the jury the record was to be considered no further than it applied to the question of limitation; but as it was incompetent and inadmissible, the appellant had the right to have it excluded altogether.
There is no difference of opinion between the members of this court on the question of jurisdiction, except that Judge Pryor is of opinion the acts done by Tully in Scott County bring the case within the provisions of the 18th section of the Criminal Code, and therefore that the peremptory instruction asked by appellant was properly refused, and that in lieu thereof instruction No. 3, asked by him, should have been given.
It is sufficient that appellant had good reason to believe Osborn was guilty of the murder charged, and was fleeing from justice, to render aid or comfort given him unlawful. It was not necessary to prove he had actual knowledge of these facts.
The instructions of the court are based on the theory that all the acts of assistance may have been rendered in Logan County, and still that the Scott Circuit Court has j urisdiction, because the principal offense was committed in that county. They are, for that reason, erroneous and misleading.
Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.