[Law v. Law.]

# Law *v.* Law.

*Contested Probate of Will.*

1. *Cancellation of will by obliteration or erasure; declarations of testator, contemporaneous and subsequent.*—Under statutory provisions regulating the revocation of wills by cancellation or obliteration (Code of 1876, § 2296; Code of 1886, § 1968), which are construed in this case, the court states the following conclusions:

(1.)   The declarations of the testator, accompanying the act of erasing the name of one of the legatees by drawing a pen through it, and subsequent thereto, are admissible as evidence to explain his intention.

(2.)   Whether he thereby intended to revoke the whole will, or only that part of it which made that person a legatee  under it, is a question for the jury under the facts of the case.

(3.)   If the erasure was made with the intention to revoke the whole will, and, when explained by the declarations of the testator, was so material as to justify the inference of an intention to revoke the entire instrument, it would be effectual for this purpose.

(4.)   If the intention was only to revoke the will *pro tanto,* so as to expunge the name of the legatee only,  it was  inoperative for this purpose.

(5.)   All alterations or revocations of any part or any clause of a will, properly executed, must be made, not by  burning, tearing, cancelling or obliterating, but only by a new will, or a codicil, properly subscribed by the testator, and attested  by at least two  subscribing witnesses, in the mode prescribed  by the statute.

APPEAL from the Circuit Court of Pike.

Heard before the Hon. JOHN P. HUBBARD.

In the matter of the probate of an. instrument which was propounded for probate  as the  last will  and  testament of John A. Law, by  Thomas W. Law, who was therein named as executor, and was contested by William H. Law, a son of the testator, whose name had been erased as one of the lega-. tees.   One of the grounds  of  contest was, that the will had been revoked by the  testator  in his life-time.   On the trial in the Probate Court, before a jury, the contestant offered to prove the declarations of the  testator at  the time of erasing the name, and afterwards, to the effect that he intended thereby to revoke the  will  because  he  was not satisfied with it. The court excluded  these declarations as evidence, and the contestan~ excepted.   The  court  charged the jury, "that if they believed from the  evidence that  the testator erased or obliterated the name of W. H. Law from the will with the intention only  to  revoke it as to him, and not as to other lega-

tees named in it, then it was not a revocation of the will as to them;" and that, " if the testator, in erasing the name of W. H. Law from the will, did not intend the alteration of the will in any other respect, then the will was not revoked by that act." To each of these charges the contestant excepted. On appeal to the Circuit Court by the contestant, these rulings, and the judgment of the Probate Court admitting the will to probate, were assigned as error; and that court reversed the judgment of the Probate Court, and remanded the cause. The proponent appeals from this judgment, and here assigns it as error.

GARDNER & WILEY, for the appellant, cited *Taylor v. Kelly*, 31 Ala. 59; *Waterman v. Whitney*, 62 Amer. Dec. 71; Schouler on Wills, § 380.

W. D. ROBERTS, *contra.*

SOMERVILLE, J.—The testator, in February, 1884, executed his will in writing, in due form of law, which was properly attested by two subscribing witnesses. He subsequently erased the name of one of the legatees, the appellee, W. H. Law, by drawing a pen through it, so as to expunge it from the instrument. Evidence was offered tending to show, that, both at the time of making this erasure, and afterwards, he declared his intention to revoke the entire will. This evidence was excluded by the Probate Court.

The charges raise the question, as to what effect this erasure or obliteration shall be permitted to have on the will— whether it can operate either as a *total* or a *partial* revocation of the instrument under the statute.

The statute on this subject provides that, "except in the cases provided for in the preceding article" [*i. e.*, marriage and birth of issue] "*a will* in writing can only be revoked by burning, tearing, canceling, or obliterating the same, with the intention of revoking it, by the testator himself, or by some person in his presence, and by his direction; or by some other will in writing, or some other writing subscribed by the testator, and attested as prescribed in the first section of this article; and when this will is burned, torn, canceled or obliterated by any other person then the testator, his direction and consent thereto, and the fact of such burning, canceling, tearing or obliteration, must be proved by at least two witnesses." Code, 1886, § 1968; Code, 1876, § 2296,

28

The statute, it will be observed, provides that "a will" may be revoked in the different modes declared. It does not say "or any clause thereof," as is said by the 6th section of the Statute of Frauds (29 Car. 2, c. 3), and by many statutes of the various American States bearing on this subject. There can be no doubt of the fact, that an entire will may be revoked in any of the modes mentioned in the statutes— by burning, tearing, cancelling or obliteration, or by a subsequent will duly executed. There is as little doubt that it may be totally or *partially* altered or revoked by a new will, or codicil properly authenticated. The difficulty in such cases arises from the equivocal nature of many acts of the former class indicative of an intention to revoke. It is very certain that no revocation can be effected by mere word of mouth, or nuncupative declaration, any more than could be done under the English Statute of Frauds. It requires one or more of the specific acts mentioned in the statute—a burning, tearing, cancelling or obliterating, with the intention to revoke, or a new will or codicil, properly executed and attested. To what extent an obliteration of the instrument must extend to be effectually revocatory, can not be stated with any great degree of particularity. The paper must certainly be materially mutilated, so that, if unexplained by accompanying declarations, an intent to revoke may be inferred from its appearance, taken in connection with the act itself. As said in *Evans' Appeal*, 58 Penn. St. 238, the act done to the will must be one which "stamps upon it an intention that it [the paper] shall have no effect,"—"an act done to the paper itself, a mark upon it, evincible of a present intent that it shall not operate as a will." So it was said by Lord Chief Justice De Grey, in reference to the English statute: "The statute has specified four modes of revocation, and if these, or any of them, are performed in the slightest manner, this, joined with the declared intent, will be a good revocation.—2 W. Black. 1043. But, as the whole question turns at last on the ascertainment of the testator's intention, the testator's declarations, both contemporaneous with, and subsequent to the act, must be admissible in evidence to explain it; for an act may often amount to a revocation, when declared by the testator to be so intended, which standing alone would not justify a like inference. 1 Jarman on Wills, 5th Ed. (Bigelow), 133, note (b); 1 Greenl. Ev. (14th Ed.), § 273; *Weeks v. McBeth*, 14 Ala. 474; Schouler on Wills, § 431. Usually, the intention with

[Law v. Law.]

which the act of spoliation or obliteration is done is for the determination of the jury, especially if it be of an equivocal nature. But the facts may be so plain and free from conflict, and the inference to be drawn so clear, as, in some cases, to justify the court in giving the general affirmative charge on the subject, thus determining the question as one of law, as in the matter of negligence and other like questions.

The Probate Court erred in not admitting the declarations of the testator explanatory of the act of erasing the appellee's name from the will. They should have been allowed to go to the jury, to explain the intention with which the act was done; but the weight to be given this evidence was entirely for the jury.

This obliteration, however, was competent to show only a revocation of the *entire* will, and *not a part* of it. Our construction of the statute is, that it was not intended to permit a revocation of a part of a will, by burning, tearing, cancelling, or obliterating. The old English Statute of Frauds, as we have said, enacted that no devise in writing of any lands, "nor *any clause* thereof," should be revocable, except by some other will or codicil in writing, or by burning, cancelling, tearing or obliterating the same by the testator. 29 Car. 2, ch. 3. sec. 7; 1 Jarman Wills (5th Ed.), *129. So, the Act of 1 Vict. ch. 26, sec. 20, passed in 1837, provides that "no will or codicil, or *any part* thereof," shall be revoked except by certain modes indicated. The change made in the latter act is, that revocation by cancellation or obliteration is not (as in the old law) placed upon the same footing as a revocation by burning or tearing. *Obliteration*, or other alteration, which does not wholly efface the will, is no longer effectual, unless executed in the manner prescribed for the execution of a will.—1 Jarman on Wills (5th Ed.), *139–140. This change of legislative policy is itself suggestive of the fact, that the practical operation of the old rule was not believed to be promotive of the administration of justice. Many English decisions may accordingly be found, which, under the influence of the former statute, hold that an obliteration of a part of a will may amount to a revocation *pro tanto.*—4 Kent Com. *532–533; 1 Jarman on Wills, *134; Schouler on Wills, § 397. The difference between our statute and the English Statute of Frauds, we repeat, is both suggestive and significant. The omission of the phrases, referring to the revocation of "*any part*" or "*any clause*" of a will, can not be construed to be uninten-

tional, or without meaning. We think this omission was *ex industria*, for the purpose of preventing the frauds and embarrassments growing out of the old rule, and to which the loose policy of pen erasures and obliterations especially and necessarily lead. Modern legislation treats with disfavor these informal alterations and erasures, and the tendency now is to require all partial changes in such solemn instruments to be manifested by a codicil, or new will properly executed and attested.—*Lovell v. Quitman*, 88 N. Y. 377, 381; Schouler on Wills, § 432.

In *Lovell v. Quitman*, 88 N. Y. 377, *supra*, recently decided by the New York Court of Appeals, a statute similar to our own, prohibiting the revocation or alteration of a will, except in the like modes specified in the Alabama statute, was construed not to authorize the obliteration by the testator of *a clause* in his will, although made for the express purpose of revoking such clause. It was held that, under the statute, no obliteration could be effective, unless it operated to altogether destroy the whole will. A contrary doctrine would, the court said, produce all the mischiefs intended to be prevented by the observance of formalities in the execution of wills, and would be "fatal to the authority of documents, subversive of the rights of parties, and would completely abrogate the statute."

In *Eschbach v. Collins*, 61 Md. 478, this question is discussed ably by the Maryland Court of Appeals. The statute in that State, like that in England, allows the whole will, "or any clause thereof," to be revoked in the same modes permitted by our statute. The testator erased or obliterated the names of two of his sons, wherever they occurred in his will, by drawing a line through them with a pen, but leaving the names legible—such erasures operating to confer estates in fee simple on all the sons by destroying the life-estates created. It was held, that while, under the express words of the statute, it was permissible for a testator to revoke his will *pro tanto*, by obliterating one or more clauses, where the effect of such erasure was simply to expunge a legacy or devise, without making a different disposition of the estate, yet that any alterations in a will by interlineation or obliteration, whereby it was sought to make such different disposition of devised property, by creating new rights and interests in others, would be void, unless authenticated, as a new will or codicil, in the manner prescribed by statute. The attempted obliterations being inoperative, the will, it was said,

must be read as it was originally written and executed.   This case illustrates the embarrassments into which we might be led by the contrary view, which has, however, met with support by at least one respectable court in this country.   See, also, *Wolf v. Bollinger*, 62 Ill. 372; *Jackson v. Halloway*, 7 John. 395.   In *Bigelow v. Gillott*, 123 Mass. 102, a conclusion opposite to that reached by the New York Court of Appeals was attained, in construing the Massachusetts statute, which is not unlike our own.   That case does not meet with our approbation.

The following conclusions may be deduced from these views:

(1.)   The declarations of the testator, both contemporaneous with, and subsequent to his act of obliterating the name of W. H. Law from his will, were admissible in evidence to explain his intention.

(2.)   Whether he thereby intended to revoke the whole will, or only that *part* of it which made W. H. Law one of the legatees, is a question for the determination of the jury, under the facts in this case.

(3.)   If the erasure was made with intention to revoke the whole will, and was so material, when explained by the testator's declarations, as to justify the inference of an intention to revoke the entire instrument, it would be effectual for this purpose.

(4.)   If the intention was only to revoke the will *pro tanto*, so as to expunge the name of W. H. Law as a legatee under it, it was inoperative for this purpose.

(5.)   All alterations or revocations of *any part*, or *any clause* of a properly executed will, must be made, not by burning, tearing, cancelling, or obliterating, but only by a new will, or codicil, properly subscribed by the testator, and attested by at least two subscribing witnesses, in the mode prescribed by the statute.

The judgment of the Circuit Court, reversing the judgment of the Probate Court, and remanding the cause to that court for a new trial, is affirmed.