WILLS—EXECUTION—ADDITIONS—FILLING IN BLANKS—PRESUMPTIONS.

The pro rata of shares to be allotted to each beneficiary under a will were originally left blank, and, when the will was offered for probate, in each blank appeared, in some instances, pencil writings over other pencil writings wholly or partially erased, and, in other instances, ink writing different in material employed from the will itself, appearing over pencil writings wholly or partly erased. The will had been in the custody of decedent for years, and bore unmistakable signs of having remained in a sealed envelope for a long time, and was delivered by him to one of the beneficiaries and executrixes, and deposited in a safety-deposit box. It was taken therefrom after testator died, and opened in the presence of witnesses. *Held*, that the will should be admitted to probate, and recorded, with the pencil writings in blank and with the ink writings as they appeared in the will; the rule as to the presumption arising from suspicious alterations having no application.

Proceedings for the probate of the alleged will of Richard Tighe, deceased. Will admitted to probate.

Arthur A. Mitchell, E. W. Moisen, Seward, Guthrie, Morawetz & Steele, and R. L. Sweezy, for contestants.

Miller, Peckham & Dixon, Strong & Cadwalader, and Charles W. Dayton, for proponents.

FITZGERALD, S.   The decedent died on the 6th of May, 1896, at No. 32 Union Square, in this city, where he had lived for 50 years prior to his death.   He was then over 90 years old.   He left, him surviving, no widow nor issue; his nearest relatives being certain first and second cousins who resided abroad, and with whom he seems to have maintained no relations of intimacy or friendship.   All the beneficiaries under his will, with the exception of the legatees for specific sums of money, are of the blood of his deceased wife.   Between himself and these latter there existed for many years the very closest of relations, and their social intimacy was of the warmest character.   He was in the habit of seeing them very frequently, and practically lived with them.   The will of the decedent is dated March 27, 1884.   No question is made by the contestants as to the compliance with the statutory requirements as to due execution and the competency of the testator; nor is it claimed that the will was the result of undue influence exercised upon the decedent.   The will itself was in the custody of the decedent for many years prior to his decease, and bears unmistakable signs of having remained in a sealed envelope for a long time, the envelope bearing the characteristic marks of age.   It was delivered by the deceased to one of the beneficiaries and executrixes named in the will, and by her deposited in a safe-deposit box, whence it was taken to the office of the attorneys for the proponent after decedent died, and there opened in the presence of witnesses.   The estate of the decedent will amount to about $2,000,000.   The body of the will is in the handwriting of his deceased wife.   The scheme of the will is to divide the estate into 100 parts.   The persons who are to receive these shares appear in the running writing of the will, and the intention of the decedent to bequeath his entire estate to the beneficiaries named is manifest.   The pro rata of shares to be allotted to each of the beneficiaries was, however, originally left blank.   There now appear in each of these blanks, in some instances, pencil writings, superimposed over other pencil writings, which have been either wholly or partially erased, and, in other instances, ink writing, different from the body of the instrument in the material employed, appearing over pencil writings wholly or partially obliterated. The contestants claim that the burden rests on the proponents to explain these erasures and obliterations, and satisfy the court by competent and satisfactory evidence that the will as it now appears was in that condition when executed by the deceased, and that, in the absence of such explanation, the court must find that the will must be recorded in blank, thus virtually defeating the undoubted intent of the decedent to distribute the estate among the individuals named in the paper, and giving it to distant relatives, for whom the deceased made no provision, and whom he is not shown to have ever known personally.   If it is possible to prevent this defeat of the clear in-

tention of the testator without doing violence to the provisions of the law, the court should be astute to discover a way of accomplishing that result.

There is no statutory or legal requirement that a will shall be drawn on a particular kind of paper, nor with the same ink, nor exclusively in ink, nor all at one time; and there is no presumption that blank spaces left for the insertion of names or amounts in a will were filled in after execution. I am convinced from all the circumstances that, in using lead pencil to fill up the spaces left for the insertion of the number of shares, the decedent was in a deliberative mood; but, when deliberation had ripened into determination, he used the more lasting and more dignified material,—ink. It seems quite certain that the decedent appreciated the importance of using the more durable method, for we find that in 10 out of the 14 spaces left for the insertion of the number of shares, he has superimposed ink over the penciling. It is a common experience even for practicing lawyers to fill in spaces left for the insertion of matter concerning which deliberation is required, and afterwards to write over it in ink the final result of the deliberation; and, I think this must have been the case here. Whether the decedent believed that, if he left the other portions of the will filled out in lead pencil, it would have the same effect, we cannot determine. It is sufficient to say that the instrument betrays the intention of the decedent to make final disposition of his property by ink writing. His failure to do so in every instance cannot prevent the will, so far as it carries out this intention, from being effective. I find, therefore, that the paper propounded consisted of the identical sheets now presented at the time of its execution, and that it may be admitted to probate and recorded, with the spaces filled in in lead pencil in blank, and that, as to the blank spaces which now appear filled in with ink, it may be recorded as it now appears in that material. The rule. in regard to the presumption as to when interlineations or alterations of a suspicious nature appearing in a will were made, which is relied upon by the contestants to defeat the will of the decedent, has not, I think, any application to this case. The pencil writings and marks which have been made the occasion for invoking the rule mentioned, I regard, as I have previously said, as purely deliberative or tentative; and it seems to me that the ink writing which indicated the testator's final determination and action is, for the purpose of the disposition of this matter, to be treated as if the penciling had never been made. In such case there could be no doubt that the difference in character of such writing and of that in the body of the will would afford no ground for saying that such writing was inserted in the will after its execution.

The will is admitted to probate. Decreed accordingly.