## Ellison v. Commonwealth.

(Decided January 25, 1921.)

### Appeal from Boyle Circuit Court.

1. Criminal Law—Acts Occurring in Different Counties—Jurisdiction. —The court of a county, in which a crime is wholly committed alone has jurisdiction of it, but, if the acts and effects constituting a crime occur in different counties, the courts of either have jurisdiction of the crime.

2. Receiving Stolen Goods—Elements of Crime.—To constitute the crime of knowingly receiving stolen property, the property must theretofore have been the subject of a larceny by one other than the receiver of the goods; the reception must have been with the knowledge of the recipient, that the property had been stolen; and the reception must have been with the intention to deprive the owner of it.

3. Receiving Stolen Goods—Place Where Crime Committed.—The crime of knowingly receiving stolen property under the statute is a crime complete in itself, and the place of its commission is not controlled by the place of the larceny, but, is committed where the stolen property is received, with knowledge of its character.

4. Receiving Stolen Goods—Elements of Offense—Evidence.—To sustain a conviction for the crime of knowingly receiving stolen property, a guilty knowledge must be shown on the part of the recipient, but, it is not necessary to prove an absolute knowledge from express information received or personal observation of the larceny, but, if such facts are shown, as from which a reasonable man of ordinary observation would morally know, that the goods had been stolen, this will constitute such evidence as from which the jury may infer, that the recipient had full knowledge of the character of the property, but, mere suspicion or belief, in the

absence of such circumstances as above described will not sus-
tain a conviction.

5.  Receiving Stolen Goods—Knowledge of Fact.—The rule in equity,
which provides that one shall be deemed to have knowledge of
a fact, when such circumstances are brought to his attention, as
would cause a man of ordinary prudence to be upon his guard,
and when diligently pursued would result in a knowledge of the
fact, does not apply to knowledge of the stolen character of goods,
as such rule would make one liable to criminal punishment for
want of ordinary prudence or negligence.

6.  Receiving Stolen Goods—Evidence.—Guilty knowledge in the re-
ception of stolen goods, as well as the fact of receiving such
goods, can be proven by evidence of circumstances, as any other
facts may be proved.

J. S. OWSLEY, BAGBY & HUGUELY and J. W. HARLAN for
appellant.

CHAS. I. DAWSON, Attorney General, and W. P. HUGHES for
appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—
Affirming.

The appellant, Ellison, was convicted, upon trial, on
an indictment, which accused him of guilt of the crime
of knowingly receiving stolen property, denounced by
section 1199, Kentucky Statutes. The venue of the
crime was laid by the indictment in Boyle county, and the
stolen property which was alleged to have been received
by the appellant, were certain boxes of cigars of the
value of more than $20.00, and that same had been stolen
from the Cincinnati, New Orleans and Texas Pacific R.
R. and Southern Ry. Co., which were common carriers,
and which had, at the time of the larceny, the cigars in
their possession for transportation and delivery, they
being operated as one corporation. The trial resulted
in a verdict of guilty against the appellant, and the fix-
ing of his punishment at confinment in the penitentiary
for one year, and a judgment was rendered in accord-
ance with the verdict. The appellant's motion for a new
trial having been overruled, his dissatisfaction with the
judgment has resulted in an appeal.

Several grounds for a new trial were assigned, but
when considered, they resolve themselves into the fol-
lowing:

First. The court erred in overruling a demurrer to
the indictment.

Second. The court erred in submitting the case to the jury, because there was no evidence conducing to prove appellant's guilt.

Third. The court erred in instructing the jury.

Fourth. The court erred in the admission and rejection of testimony.

(a) Touching the first ground for a new trial, the record fails to disclose that appellant, ever at any time, offered a demurrer to the indictment.

(b) At the close of the testimony for the Commonwealth, and at the close of all the testimony, the appellant moved the court to direct a verdict in his favor. These motions were overruled. The only basis which could have existed for such motions, and which would have justified their being sustained, was that when all the facts, which the evidence conduced to prove, and the reasonable inferences which could be drawn therefrom were considered, there was yet no evidence of the appellant's guilt as charged in the indictment, or at least no evidence of one or more of the elements which were essential to constitute the crime of which he was convicted. To constitute the crime of knowingly receiving stolen property, under section 1199, Kentucky Statutes, the property received must theretofore have been the subject of a larceny perpetrated by one, other than the party accused of having feloniously received it; the reception must have been with knowledge of the recipient that the property had been stolen; and the reception must have been accompanied with the intention to deprive the owner of it. That the property which appellant was accused of receiving had been stolen from the common carriers mentioned, and that they had the property in their possession for transportation and delivery, is amply sustained by the evidence, and no further attention will be given to that phase of the case. The evidence tends to show that the car, from which the cigars were stolen, arrived in the yards at Danville, in the afternoon of the 25th day of April, and the larceny occurred between that time and the early morning of the 26th day of April, and on the afternoon of the 26th, between fifty and one hundred boxes of the cigars, which had been stolen, were found to be in a room which appellant was at that time occupying, in the third story of a building, upon a street in Danville. The appellant admits that he received ten boxes of these cigars in Lincoln county, but it is insisted

for him that he did not receive any of the cigars in Boyle county, where the indictment alleges the reception, and within the jurisdiction of the Boyle circuit court, wherein the trial and conviction were had, and that there was an entire failure of evidence which proved that he received the cigars, in any way, in Boyle county, or that he had any knowledge of their having been stolen at the time he received them. It must be conceded that, although the appellant may have known the stolen character of the cigars, he was in no wise guilty of the crime of knowingly receiving stolen property, until he received them, and a failure to prove that he received them in Boyle county or that an act was done by appellant in Boyle county, the direct effect of which was the reception of the cigars would have been fatal to the prosecution, and entitled the appellant to a directed verdict in his favor. The crime of knowingly receiving stolen property is a substantive crime complete in itself, and is not, under the statute, an accessorial act to a larceny, and the place of its commission is not controlled by the place of the larceny, but is committed where the stolen property is received, with knowledge of its character. Allison v. Commonwealth, 83 Ky. 254; Roberson, section 448. If the act of knowingly receiving stolen property was one accessorial to a larceny, the acts would be those of an accessory after the fact, and the same rule would apply as to jurisdiction. Tully v. Commonwealth, 13 Bush 142.

Hence it becomes necessary to examine the evidence to determine whether there was evidence to support the verdict to the effect that appellant received the cigars, or any of them in Boyle county, or any act was done by appellant in such county, the effect of which was the reception of the cigars, elsewhere with the knowledge at the time of their reception of the stolen character of the cigars. Only two witnesses deposed to anything which occurred in Boyle county concerning the connection of the appellant with the cigars, and these witnesses are the appellant, himself, and his cousin, McKinsie. McKinsie was offered by the prosecution and deposed that the appellant was an extra brakeman upon the railroad, and occupied, while in Danville, an upstairs room, which one Virgil Davis, also occupied with him. About the 26th or 27th of April, or near that time, the witness met appellant, who apparently had just returned from a trip upon the railroad, and accompanied him to his room.

There he observed, under the bed and covered up by the quilts, together, between fifty and one hundred boxes of cigars. Appellant made no comment concerning the cigars, but about that time Davis came into the room and witness inquired of him about the cigars, and Davis said that they were his, but made no statement as to where, or when, or how he had procured them. While the cigars remained there, witness and appellant each smoked four or five of them. The following morning, Davis, who had an automobile, in his possession which was owned by someone else, inquired of witness and appellant if they did not desire to take a ride, and they having accepted the invitation, Davis wrapped the cigars in a quilt, belonging to appellant, and carrying them down the stairway to the door, put them in the automobile, they being still concealed by the quilt. Then he, witness and appellant got into the machine, and Davis drove them to Waynesburg, in Lincoln county, about twenty miles away. There Davis entered a store for the purpose of selling the cigars, but failing to find the keeper, he returned to the car and said that he would have to take them back to Danville, when the appellant said that the barn at his father's dwelling, about one and a half miles away would be a good place to put them. They then drove to the home of appellant's father and Davis put the cigars in the barn, or at least put them somewhere out of the automobile. They had dinner at the dwelling and returned to Danville on that afternoon. The appellant deposed that he was absent from Danville on a visit to his father's home, having left Danville at 11 o'clock a. m. on the 25th and did not return until the afternoon of the 26th. In this statement he is not corroborated, but if true, it would seem that it would have been easy to have found corroborating witnesses. When he and McKinsie went to his room on that evening, he saw the cigars there for the first time. He asked McKinsie about them and he said that Davis had put them there. When Davis appeared, he inquired of him concerning them, and Davis said that he had bought them in Lexington for seventy-five cents per box, as they were damaged; he had rented the room he occupied, but that Davis occupied it with him, with his permission, and could enter the room in his absence as it was not locked; he had no knowledge that the cigars had been stolen. Otherwise his statements agreed with those of McKinsie, except

that when at Waynesburg and Davis had failed to sell the cigars, although he seems not to have made but one effort, it was then raining and Davis inquired of him if he could not leave them at appellant's father's house, and he told him that he could. Davis, when they arrived, put them in the barn, and all three returned to Danville without them. He further deposed that Davis said that he was taking them to Waynesburg, because he could get a better price than at Danville. Thereafter Davis went to Waynesburg and took away all of the cigars, except ten boxes, which he thereafter gave to appellant, who used one box and sold the other nine for one dollar per box. The man to whom he sold them deposed that appellant told him that he had won the cigars. Davis fled the country when an investigation of the larceny was begun. Davis was not engaged in the cigar trade, and was in most part without visible employment. An affidavit of appellant was offered in evidence by the Commonwealth and which was made by him when the investigation of the larceny was being had, and in this he stated that the cigars remained in his room for three or four days, and that he requested Davis to remove them, at the same time inquiring of him, if they were stolen. There were sixty-five boxes of them. He also stated in the affidavit that Davis told him that the reason he brought them away from Waynesburg, was that he could get a better price for them in Danville. McKinsie deposed that the cigars were fresh and undamaged. The evidence proved that they were of the value of about six dollars and twenty-five cents per box. The appellant, further, deposed that some time, not exceeding two months, after the cigars were stolen and taken to Waynesburg, and put in the barn of appellant's father, at whose dwelling appellant made his home, Davis in Boyle county, made a gift to him of ten boxes of the cigars, which were at the barn, and which he accepted at the time, and thereafter sold the cigars, for one dollar per box.

It is insisted, that the court erred to the substantial prejudice of appellant's rights, by refusing to direct the jury, to disregard and not consider, the proof of any facts, concerning the cigars, and appellant's connection with them, which occurred, in Lincoln county, but, this manifestly was not error. While the appellant could not be convicted upon evidence, which proved that he

wholly received the cigars in Lincoln county, yet, the facts transpiring in the latter county, with reference to the cigars, was competent, as shedding light upon the issue, as to whether or not the cigars were received by him in Boyle county, and the knowledge of appellant as to their stolen character. The evidence of one's guilt of a crime, in a county, is not confined to facts and circumstances occurring, in that county.

There is indeed no testimony, which proves that appellant had absolute knowledge, that the cigars were stolen property, from having been actually informed, that they were stolen, or from personal observation of the act of stealing, but proof of such absolute knowledge is not necessary to sustain a conviction, though mere suspicion or belief is not sufficient, and in Young v. Com., 4 K. L. R. 55, this court held, that an instruction defining the crime should use the word "know," without modification, instead of "believe." In certain jurisdictions it is held that goods received under circumstances that would cause any reasonable man of ordinary observation to morally know, that they were stolen will sustain a conviction of knowingly receiving stolen property. Birdsong v. State, 120 Ga. 850; Cobb v. State, 76 Ga. 664; State v. Freedman, 3 Penna. 403; Hester v. State, 103 Ala. 83; Collins v. State, 83 Ala. 434. While the statute, section 1199, *supra,* uses the term "knowing," and we have held, that it is erroneous to rest the guilt of an accused upon any less degree of information, it has always been held, that the proof of receiving goods under circumstances, that would cause a reasonable man of ordinary observation to believe or to morally know, that they were stolen, constitutes evidence from which a jury is authorized to infer and to find, that the recipient of stolen goods had full knowledge of their character, and hence a conviction of guilty knowledge may be sustained by circumstantial evidence. This is true, although the equitable rule, which provides, that one shall be deemed to have knowledge of a fact, when circumstances are brought to his knowledge, which would cause a man of ordinary prudence to be upon his guard, and which circumstances pursued with diligence would result in the knowledge of the fact, does not apply to the guilty knowledge required of one, who is accused of knowingly receiving stolen property, as the application of such a rule might render one criminally liable for want of ordinary

prudence or for negligence. Robinson v. State, 34 Ind. 452; State v. Dosing, 117 N. W. 869. Knowledge of the stolen character of property may, however, be shown, as said, by circumstantial evidence, as any other fact may be shown, including the fact of the reception of stolen property. Newton v. Com., 158 Ky. 4. The evidence, that, the cigars, were shown by the markings upon the boxes, to be of the aggregate value of over $400.00, that they were fresh and undamaged; that they were in possession of Davis, who claimed to have purchased them at a less sum than $50.00, and who, appellant knew to be without visible employment, and as Mc-Kinsie described him "living upon other people," that Davis proposed to carry them from a populous place twenty miles away to a village to find a market for them, and there made no real effort to sell them, and then stored them away in a barn in the country and afterward gave appellant over $60.00 worth of them, which appellant sold for $9.00, after using a box, and concealing, from the purchaser, the manner, in which he obtained them, was sufficient evidence, from which the jury was justified in finding that he knew them to have been stolen. The evidence, which proved the extreme intimacy of appellant and Davis, who was manifestly the thief; the taking of so large a quantity of cigars to appellant's room, where they remained, according to his first sworn statement for three or four days; the indifference of appellant, to the presence of the cigars in the room, according to McKinsie, when appellant, as he deposes, first discovered their presence, indicating previous knowledge concerning them; that he accompanied Davis and the cigars on a ride of twenty miles, and then deposited them in a barn at appellant's father's house, without other excuse than the mere pleasure of a ride to a place, which he had left the preceding afternoon, and remained only long enough to eat dinner and then return; that Davis afterward removed all the cigars, except the ten boxes, when he could have as easily and as safely removed all, and without any excuse appearing as to why he left the ten boxes; that appellant appropriated the ten boxes; and the suspicious character of all their actions, was evidence, from which the jury was justified in inferring that a portion of the goods, any how, as much as the ten boxes, of the value of over $60.00 was set apart to appellant, as his share, and was received by him, before the

removal from Boyle county, to Lincoln. If such understanding was arrived at between appellant and Davis, before the removal of the cigars to Waynesburg, the share of appellant became under his control and dominion and amounted to a reception, as such share then came into his actual possession, and under his control and dominion, although evidence may be lacking of any actual custody of the cigars, by him.

If it, however, should be conceded, that appellant did not receive any of the cigars, before their removal from Boyle county, he deposes, that in Boyle county, Davis made a gift to him of the ten boxes, which he had left at Waynesburg, and that he accepted of the gift, and in pursuance and because of same, he took corporal possession of them and sold them. Section 21, of Criminal Code provides, "If acts and their effects constituting an offense occur in different counties, the jurisdiction is in either county." If with knowledge of the stolen character of the goods, appellant had purchased them from Davis, in Boyle county, and by reason of the act of purchase, had taken corporal possession of the goods, in Lincoln county, there would be little ground for disputing the fact, that the receiving of the goods was the effect of the act of purchase, and the courts of either county would have jurisdiction of the crime. In principle, there could be no difference, between receiving constructive possession of the property by acceptance of the property, as a gift, in Boyle county, and as an effect of that act receiving actual possession of it in Lincoln county, as it is not necessary, that there should be a consideration between the thief and the receiver of the stolen goods to support a charge of receiving them, with guilty knowledge of their character, to constitute the crime.

(c) The instructions were in some respects erroneous, but their only fault was that they were more favorable to appellant, than he was entitled to, and hence, no discussion of them is necessary.

(d) The fourth ground, so far as relating to the admission of testimony, has already been considered, and no prejudicial error appears in the rulings relating to the exclusion of testimony.

The judgment is therefore affirmed.