This case arises from a dispute over the construction of the joint will of Earl and Ernestine Head. The trial court held that an unwitnessed codicil to the will was a nullity and that an attempted partial revocation of the will by the testators had effected a revocation of the entire will. Because we conclude that the unwitnessed codicil was a nullity, but that the attempted partial revocation did not effect a revocation of the entire will, we affirm in part, reverse in part, and remand.
In 1966, Earl Head and his wife Ernestine prepared a joint will, without the benefit of legal counsel. The will was handwritten by Ernestine, duly attested by two witnesses, and notarized. Ernestine died in 1987; Earl died in 1989, and the will was admitted to probate that year.
In October 1989, Daniel T. Head, Dorothy Head Johnson, and Birdie Ruth Schoening (the "Contestants"), who would benefit if Earl Head had died intestate, filed a petition with the circuit court contesting the Heads' will. They contested it on the grounds that it lacked the requisite statements of testamentary intent. Glinda Summerlin Hansel, as executrix (the "Proponent"), filed a motion for summary judgment. The circuit court entered a summary judgment for the Proponent and remanded the case to the probate court for administration. After remand, the Proponent filed this action with the circuit court, seeking a construction of certain provisions of the will. The circuit court held that an unwitnessed codicil to the will was a nullity and that an attempted partial revocation had effected a revocation of the entire will. The Proponent appealed.
The will offered for probate reads in pertinent part:
 "Also, that all insurance, checking account, Savings account, and all mortgage balances due us, be made payable to Glinda Summerlin Autery, and that after after [sic] all funeral expenses, and our current debts are paid in full, that one half, of the balance of our cash assets be divided equally between, Jerry Clinton Summerlin, Donald Harold Summerlin, and James Albert Poole, our nephews. *Page 1144 
___ The remaining one half to be divided equally between the children of, Daniel T. Head, Sr.,
"VOID Earl L. Head Ernestine S. Head
 Birdie Ruth Schoening, Glinda Summerlin Autery, and Joseph Byron Summerlin.
"EXCEPTIONS TO ABOVE:
 Any Monies, Stocks etc. in the name of Ernestine S. Head only to be divided equally between the following: Earl L. Head, Joe B. Summerlin, Glinda S. Autery, Donald H. Summerlin Jerry C. Summerlin."
(Emphasis added.)[1]
The main part of the will was written longhand in cursive characters in ink. The "EXCEPTIONS" clause was written in a different ink from that used in the main part of the will. The evidence indicates that sometime after they had executed the will Ernestine received stock in a mutual fund, and that she and Earl attempted to bequeath the stock to their heirs by modifying their will and adding the "EXCEPTIONS" clause. They neglected, however, to have the will properly re-executed.
The term "VOID" was printed (i.e., not in cursive longhand) in the margin, and was also in a different ink. Correcting fluid had been used to cover a name, and the Heads' names had been written on top of the correcting fluid. The circuit court found that the original name covered by the correcting fluid cannot now be determined.
 I. The Unwitnessed Codicil
The Contestants argue that the circuit court correctly held that the subsequently added and unwitnessed "EXCEPTIONS" clause is a nullity. We agree. The formalities of execution and witnessing are essential to the validity of a codicil.Calhoun v. Thomas, 274 Ala. 111, 114, 145 So.2d 789, 792
(1962). See Barnewall v. Murrell, 108 Ala. 366, 389,18 So. 831, 841 (1895) (stating that attempted changes and alterations to a will made after its execution cannot affect the validity of the will); 2 William J. Bowe Douglas H. Parker, Page onWills § 22.2 (1960) (stating that "changes added after the original execution constitute no part of the will").[2]
 II. The Attempted Partial Revocation
The Contestants also argue that the Heads' obliteration of the name of a class member who was to receive a portion of one-half of the net cash assets of the estate effected a revocation of the entire will.[3] The circuit court could not determine the content of the obliterated portion of the will. The Contestants argue that because Alabama does not allow partial revocation, the entire will must be revoked and the estate distributed pursuant to the intestacy statutes. We disagree.
In Alabama, the law is well settled that "the intention of the testator is always the polestar in the construction of wills, and that the cardinal rule is to give that intention effect if it is not prohibited by law." deGraaf v. Owen,598 So.2d 892, 895 (Ala. 1992); Mastin v. First Nat'l Bank ofMobile, 278 Ala. 251, *Page 1145 177 So.2d 808 (1965); O'Connell v. O'Connell, 196 Ala. 224,72 So. 81 (1916). This fidelity to the testator's intent applies to the intent to revoke a will. The intent to revoke a will in its entirety may be given effect if that intent is expressed in a subsequent will or by a physical act. Section 43-8-136, Ala. Code 1975, provides in pertinent part:
 "(a) A will or any part thereof is revoked by a subsequent will which revokes the prior will or part expressly or by inconsistency.
 "(b) A will is revoked by being burned, torn canceled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in his presence by his consent and direction."
(Emphasis added.)
In Law v. Law, 83 Ala. 432, 3 So. 752 (1888), this Court held that the statutory predecessor of § 43-8-136 did not allowpartial revocation by physical act, and thus created a narrow exception to the general rule that courts should effect the intent of the testator. In Law, 83 Ala. at 436, 3 So. at 754, this Court cited the New York decision of Lovell v. Quitman,88 N.Y. 377 (1881), for the proposition that, under a statute very similar to Alabama's revocation statute, an attempted partial revocation by physical act is ineffective. Accord Calhoun v.Thomas, 274 Ala. at 114, 145 So.2d at 791. Thus, where the testator intends a partial revocation by physical act, the will is probated in its original form, disregarding the attempted obliteration, if possible. Id. at 114, 145 So.2d at 792; Law,83 Ala. at 436, 3 So. at 754.
In this case, however, the original name obliterated by the Heads cannot be determined. In this circumstance, commentators have opined:
 "If the state does not allow partial revocation by physical act, the lines or marks, of cancellation or alteration are ignored and the will is admitted to probate in its original, unaltered form; but where it is impossible either from the will itself or from extrinsic evidence to determine the words which were erased, stricken out or obliterated, a serious problem arises. If the will is admitted to probate minus the altered, obliterated provisions, then partial revocation by physical act is in fact allowed in such cases though it is disallowed in theory. On the other hand, to hold in such situations, as some courts have, that the entire will must be denied probate if obliterated parts thereof cannot be ascertained and made out may be objected to as a form of total revocation unauthorized by statute which results from an ineffective attempt at partial revocation and in spite of the total absence of an intention on the part of the testator that the will should be totally revoked. Thus, these courts unwittingly uphold the rule denying the intended effect of a lesser act of attempted partial revocation, on the ground that statutory authority for partial revocation is lacking, while at the same time accomplishing this result only by imposing upon the interested parties an even greater effect of total revocation by an unintended method that is not sanctioned or authorized by statute."
2 William J. Bowe Douglas H. Parker, Page on Wills § 22.3, 565-66 (1960) (footnotes omitted). This Court has not addressed this specific issue, and the courts of other states are not in accord. Compare In re Ross' Will, 107 N.Y.S.2d 185 (Sur.Ct. 1951) (allowing balance of will to be probated when obliterated portion could not be discerned) with Todd v. Rennick,13 Colo. 546, 22 P. 898 (1889) (voiding entire will when obliterated portion could not be discerned) and In re Johannes' Estate,170 Kan. 407, 227 P.2d 148 (1951) (same).
In our view, the better approach is that of the New York courts:
 "[W]here the contents of the parts excised from the will may be shown by competent evidence . . ., the will should be probated, including the missing clauses as still a part of the will and unrevoked. Lovell v. Quitman, 88 N.Y. 377. . . . In case such evidence is not forthcoming, then we think that part of the will which remains should be probated."
In re Kent's Will, 169 A.D. 388, 391, 155 N.Y.S. 894, 897
(1915). Accord Ross' Will, 107 N.Y.S.2d 185. This view best reconciles *Page 1146 
the overall intent of the testator with the intent of the Legislature.
The Heads did not intend to revoke their entire will. For a physical act to effect a revocation of the entire will, the intent to revoke must strike at the "existence of the whole instrument," not just a part thereof. Board of Trustees of theUniversity of Alabama v. Calhoun, 514 So.2d 895, 898 (Ala. 1987). This case is different from Law, supra, in that there was no proffered testimony to the effect that the Heads intended the correction fluid or the word "VOID" to effect a revocation of the entire will. Because the word "VOID" was written in the margin with two arrows pointing to the obliterated legacy, as opposed to being written over the signatures of the testators or over the entire face of the document, we hold that the revocatory intent of the Heads was directed only to the obliterated legacy, not to the entire will. See Woodruff v. Hundley, 127 Ala. 640, 29 So. 98 (1900) (stating that a will must be materially mutilated so that intent to revoke the entire will can be inferred); cf. Board ofTrustees, 514 So.2d at 898 (holding that the obliteration of a signature page effects revocation of the entire will); Franklinv. Bogue, 245 Ala. 379, 17 So.2d 405 (1944) (holding that sufficient revocatory intent was present where the words "annulled" and "void" were written in testator's handwriting with intent of revoking the entire will being shown at time of writing such words).
The Heads did, however, intend to revoke a portion of their will. But § 43-8-136 proscribes a partial revocation by physical act, i.e., a revocation of a portion of the will by burning, tearing, canceling, obliterating, or destroying with the intent of the testator to effect a revocation of that part of the will touched by the physical act. See, e.g., Ala. Code 1975, § 43-8-136(b); In re Mechler's Will, 246 Wis. 45,16 N.W.2d 373 (1944); L.S. Tellier, Annotation, Effect ofTestator's Attempted Physical Alteration of Will AfterExecution, 24 A.L.R.2d 514, 538-41 (1952). Had the Legislature not proscribed a partial revocation, the portion of a class gift originally allocable to a party whose name was obliterated might have been redistributed to the remaining members of that class. In re Lindeman's Estate, 141 Pa. Super. 225, 14 A.2d 837
(1940); Brown v. Brown, 91 S.C. 101, 74 S.E. 135 (1912); Tellier, Annotation, Effect of Testator's Attempted PhysicalAlteration, 24 A.L.R.2d at 551-54. However, § 43-8-136 prevents the effectuation of the Heads' intent to revoke one portion of a class bequest of their net cash assets.
On the one hand, it is clear that we should give effect to the testators' intent with respect to the disposal of their property. Anderson v. Griggs, 402 So.2d 904, 909 (Ala. 1981) (" '[I]t is not to be presumed that the testator intended to die intestate as to any portion of his property, unless the contrary intention is so plain as to compel a different conclusion." ') (quoting Baker v. Wright, 257 Ala. 697, 703,60 So.2d 825, 830-31 (1952)). On the other hand, it is also clear that we may not give effect to their intent to revoke that portion of the bequest that is obliterated, but that we should, if possible, enforce the will in its original form. Ala. Code 1975, § 43-8-136; Calhoun v. Thomas, 274 Ala. at 114,145 So.2d at 792; Law, 83 Ala. at 436, 3 So. at 754.
When the obliterated portion of a will is undiscernible, the question becomes one more of evidence than of intent. When the question concerning a portion of a will is a lack of evidence, the remainder of the will should be upheld. In Skeggs v.Horton, 82 Ala. 352, 356, 2 So. 110, 113-14 (1887), this Court held that when a will had been lost or destroyed and competent evidence as to all but one legacy was available, the remainder of the will, as proven, should be admitted to probate. Here, the evidence is sufficient as to all but one legacy. The will itself exists. Only the evidence with respect to a portion of the class gift of one-half of the net cash assets of the estate is insufficient.
Constriction of the class by omitting the obliterated name and increasing the bequest to the other class members would approach the effect of a partial revocation or an alteration, without the requisite re-execution of the will. See, e.g.,In re Lindeman's Estate, 141 Pa. Super. 225, 14 A.2d 837; Tellier, Annotation, Effect of Testator's Attempted PhysicalAlteration, 24 A.L.R.2d at 551-54; W.W. Allen, *Page 1147 
Annotation, Interlineations and Changes Appearing on Face ofWill, 34 A.L.R.2d 619, 669-73 (1954). Instead, the subject matter of the obliterated portion of the will should be disposed of through intestacy.[4] See Ala. Code 1975, §§ 43-8-40
to -58.
The attempted revocation of a portion of a will not material to the overall testamentary plan allows the will to be admitted to probate with the property that would have passed by the obliterated portion passing by intestacy. In this case, the obliteration of the name of one member of the class that is to receive one-half of the Heads' net cash assets is not material to the testators' overall testamentary plan. See Abbey's Goods, 5 Notes of Cases 614 (Eng. 1847); James's Goods, 1 Swabey T. 238, Eng. Reprint 709 (1858); see generally In re Tighe's Will,24 Misc. 459, 53 N.Y.S. 718 (Sur.Ct. 1898).[5] Thus, we hold that the will should be admitted to probate and the share allocable to the person whose name was obliterated should be disposed of through intestacy.
Accordingly, that portion of the circuit court's judgment holding the codicil invalid is affirmed, that portion of the judgment holding the entire will revoked is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, COOK, and BUTTS, JJ., concur.
[1] The Contestants do not assert that any of the markings on the will were made by persons other than the Heads.
[2] Similarly, the Heads' writing of their own names on top of the correcting fluid that covers the original disposition to the children of the party whose name was obliterated was ineffective as an unwitnessed addition to the will. SeeBarnewall; 2 William J. Bowe Douglas H. Parker, Page on Wills
§ 22.2. In any event, we note that the Heads had no children.
[3] The Proponent argues that the Contestants' assertion concerning revocation of the will in this action is barred by the doctrines of res judicata and collateral estoppel, because of the prior action contesting the will. In Adams v. Carpenter,566 So.2d 236, 242 (Ala. 1990), this Court held that the doctrines of res judicata and collateral estoppel do not apply when the cases are filed to "resolve two entirely different and distinct causes of action." In Adams, 566 So.2d at 238, the executors filed a complaint seeking construction of a will even though the will had previously been contested and held to be valid. This Court held that an action contesting a will and an action seeking the trial court's construction of the terms of the will are separate and distinct actions. Id. at 241. Thus, this present action is not barred, because it is more in the nature of an action seeking the circuit court's construction of the will than in the nature of an action contesting the will's validity.
[4] In Skeggs v. Horton, 82 Ala. 352, 356-57, 2 So. 110, 114
(1887), this Court did not reach the issue of the disposition of the missing portion of the testator's plan.
[5] Even if the Heads' obliteration had destroyed two names, though the spacing in the will indicates otherwise, distribution of the assets pursuant to the remaining portion of the will does less violence to the purpose of the law of descent and distribution than would revocation of the entire will. See Abbey's Goods and James's Goods; see generally In reTighe's Will.